## THE ARKANSAS.

*(District Court, S. D. Iowa. 1883.)*

1. JURISDICTION IN ADMIRALTY—COLLISION OF VESSEL WITH STRUCTURES IN RIVER AND ON LAND.

There is a clear distinction between torts arising from the collision of boats with structures placed in the navigable bed of a river, and torts resulting from collisions of boats and vessels with structures on land, whether immediately along the shore or not. Torts of the former class are within the admiralty jurisdiction, and torts of the latter class are of common-law cognizance; and whether the structures are solid or floating, realty or personalty, firmly fixed to the bed of the river or otherwise, does not affect such jurisdiction.

**2. SAME—PROCEEDING IN PERSONAM—UNLAWFUL OBSTRUCTION.**

Where a vessel is injured by a collision with a structure unlawfully placed in the navigable bed of a river, the party creating the obstruction may be sued for the injury in an action *in personam* in a proper court of admiralty; but the owners of the vessel cannot in such a case proceed *in rem* against the solid structure, whatever it may be, because there can be no maritime lien upon such a structure to be enforced in the admiralty by its seizure and sale.

**3. SAME—LAWFUL ERECTION OF STRUCTURE.**

Where a structure lawfully created in the navigable bed of a river is injured by a collision caused by the negligent management of a vessel, the owner of such structure may proceed in an admiralty court by action *in personam* against the owners of the vessel, or *in rem* against the vessel itself.

**4. SAME—COMMON LAW—LIEN ON MOVABLES.**

The admiralty jurisdiction owes its existence chiefly to the fact that the common-law tribunals, by reason of their modes of procedure and their doctrine that possession is indispensable to a lien upon movables, are wholly inadequate to give relief against ships and vessels afloat upon the high seas and navigable waters of the earth.

**5. SAME—FLOOD—COLLISION OF VESSEL WITH BUILDING ON LAND.**

The jurisdiction of the admiralty over marine torts depends upon locality,—the high seas or other navigable waters within admiralty cognizance; and, being so dependent upon locality, the jurisdiction is limited to the sea, or navigable waters not extending beyond high-water mark; and where a building erected on land near a navigable river is injured by collision, caused by the negligent management of a vessel which has been floated against it by reason of a flood raising the waters of said river above the banks thereof, and carrying said vessel beyond said banks, this does not constitute a tort within the jurisdiction of a court of admiralty.

In Admiralty.

This is a proceeding *in rem*. The defendant steamer was libeled for an alleged marine tort, to the damage of the plaintiff's property.

The libelants allege that they are the owners of a depot for the reception and storage of oil upon the levee of the city of Keokuk, *near* the Mississippi river; that on or about the twenty-fourth day of April, 1882, by reason of an unusual and extraordinary flood of said river, the water extended up to and around the libelant's said property; that, in consequence of the careless, negligent, and unskillful manner in which said steamer was managed and navigated, she was floated and propelled upon and against the libelant's said property, whereby a tank containing a large quantity of oil was crushed and broken, and the oil destroyed, etc., to the damage of the libelant in the sum of $600, etc. To this libel the intervening claimants except, upon the ground that the tort complained of, as stated in the libel, is not of admiralty jurisdiction.

*Anderson Bros. & Davis*, for libelant.

*Hagerman, McCrary & Hagerman,* for claimant.

LOVE, J. Locality is the test of admiralty jurisdiction over marine torts. When, before the decision in *The Genesee Chief*, 12 How. 443, it was settled that there was no jurisdiction in admiralty above tide-water, it was also settled that a marine tort committed above tide-water was not within the cognizance of the admiralty. When, in that case, the supreme court decided that navigability, and not the flux of the tides, is the true test of this jurisdiction, the Amer-

ican courts of admiralty took cognizance of maritime contracts and torts upon our navigable rivers above as well as below tide-water; and, locality being the test of jurisdiction over marine torts, the only question in the present case is whether the trespass was committed upon land or upon navigable water.

The exceptions to the present libel raise this important question: What is the true *limit* of admiralty jurisdiction in questions of tort upon our great navigable rivers? Locality being the test of admiralty jurisdiction in such cases, have we any test as to locality itself upon those great rivers which, flowing ordinarily in well-defined channels, not unfrequently rise high above their banks, and cover with their floods extensive regions of country, from bluff to bluff, with a depth of water sufficient to float vessels of considerable size and burden? This precise question could not have arisen prior to the case of *The Genesee Chief*. When the test of admiralty jurisdiction was the flux and reflux of the tides, the flow of the tide then marked the utmost limit of admiralty jurisdiction, and it ordinarily defined a sufficiently certain boundary. Wherever the tides prevailed there was navigation and maritime commerce, and, by consequence, admiralty jurisdiction. Hence, when a marine tort was committed, there could have been little difficulty in determining by its locality whether it was within the admiralty jurisdiction or not. But the test of admiralty jurisdiction now, being, not the tide flood but navigability, and such rivers as the Missouri and Mississippi being subject to extraordinary and capricious fluctuations, it often becomes a difficult question to determine whether or not a tort committed upon their waters is within the admiralty jurisdiction.

I understand libelant's counsel in this case to contend that it is a question of actual navigation in each case, and that the jurisdiction of the admiralty is co-extensive with the navigation of the vessel. A marine tort, therefore, may be committed within the jurisdiction at any place where the vessel floats upon the waters of a navigable river, whether within its ordinary banks or elsewhere. I am not myself prepared to accept this doctrine. Suppose a vessel floating far from the ordinary banks of the river, over widely-extended bottom lands, should, by the negligence of the navigator, strike and injure some man's fences, houses, or barns; could the tort be brought within the cognizance of the admiralty? Again, suppose some individual should negligently, or without authority or warrant of law, place an obstruc- tion or erection of any kind, not in the navigable channel of the river, but upon some wide bottom land, and a vessel floating over the same during an overflow should run upon the obstruction and receive injury; could the owners of the vessel sue the party creating the obstruction *in personam* in a court of admiralty? It seems to me that to these questions a negative answer must be given. Yet it is very certain that a case of tort arising from the collision of a vessel with

a structure of the same kind, placed without license or authority in the bed of the river and in navigable water, would be within the admiralty jurisdiction. *Atlee* v. *Packet Co.* 21 Wall. 389; *Railroad Co.* v. *Steam-tow Co.* 23 How. 209.

What, then, it may be asked, is the criterion of jurisdiction as to place or locality upon these great, ever-changing navigable rivers? When is the locality or place where a tort is committed within admiralty cognizance and when not? I do not myself feel called upon to answer this general question. Though highly desirable, it would no doubt be extremely difficult to lay down any general rule or criterion by which the jurisdiction could be tested in all cases. For the decision of the present case suffice it to say that there is a clear distinction running through the cases between torts arising from the collision of boats with structures placed in the navigable bed of the river, and torts resulting from collision of boats and vessels with structures on land, whether immediately along the shore or not. Torts of the former class are within the admiralty jurisdiction; torts of the latter class are of common-law cognizance. The solution of the question of jurisdiction does not depend, in my judgment, upon the fact of the structure being solid or floating, realty or personalty, firmly affixed to the bed of the river or otherwise. It is a question of place, and of the rightfulness of the structure. Is the structure in the navigable bed of the river, and is it there by lawful authority or not? If the structure is placed in the navigable bed of the river without rightful license or authority, and a vessel is injured by it, the party creating the obstruction may be sued for the injury in an action *in personam* in a proper court of admiralty. This is manifest from the cases of *Atlee* v. *Packet Co.* and *Railroad Co.* v. *Steam-tow Co.*, cited above.

The owners of the boat cannot, of course, in such case proceed *in rem* against the solid structure, whatever it may be,—whether a bridge, a pier, boom, or signal-post,—because there can be no maritime lien upon such a structure to be enforced in the admiralty by its seizure and sale. Such is the doctrine in the case of *The Rock Island Bridge,* 6 Wall. 213.

But suppose, on the other hand, the structure, whether bridge, boom, pier, or light-house, be a lawful one; suppose it to be placed in the navigable bed of the river by lawful authority; and suppose some reckless mariner should carelessly run his vessel upon it and injure it; can it be doubted that the tort thus committed would be within the admiralty jurisdiction? Can it be doubted that in such case the owner of the structure might proceed against the owners of the boat *in personam,* or against the boat itself *in rem?* The tort itself would be a marine tort; it would be, as to place, within the admiralty jurisdiction. The owner of the structure would have a right to proceed *in rem* against the boat, because, from its nature, a maritime lien could attach to the boat. The owner of the structure would, in this respect, have a certain

advantage over the owner of the boat, since the latter, if injured, would be restricted to the remedy *in personam*. And this is exactly as it should be, since the boat is a moving, transitory thing, and if no maritime lien attached to it, and no remedy existed in admiralty to enforce the lien, the boat might take its departure into distant states or foreign jurisdictions, leaving the owner of the structure without any effectual remedy. Indeed, the admiralty jurisdiction owes its existence chiefly to the fact that the common-law tribunals, by reason of their modes of procedure, and their doctrine that possession is indispensable to a lien upon movables, are wholly inadequate to give relief against ships and vessels afloat upon the high seas and other navigable waters of the earth.

There is, therefore, good reason why the maritime lien and the admiralty jurisdiction should obtain in favor of the owner of a lawful structure, injured by the negligent navigation of a colliding vessel. The common law could give him no adequate relief. But this reason does not apply reciprocally in favor of the owner of the vessel as against the solid structure, which cannot move off and leave the owner of the vessel without remedy. Hence, there is no necessity for establishing a lien upon such a structure, or enforcing the plaintiff's claim by a proceeding *in rem*. And since it is settled beyond question, by *The Atlee* and *Tow-boat Cases*, that the owners of the boat would have a right to proceed *in personam*, in admiralty, against the owners of the structure, why should the reciprocal right of the owners of the structure to a remedy in admiralty against the boat be denied?

So much respecting the jurisdiction of the admiralty over torts arising from the collision of vessels with structures erected within the navigable waters of a river.

Let us now consider the question of jurisdiction with respect to the collision of boats and vessels with structures upon land, whether along the banks and shores of the river, or in towns and cities situated upon it. Does the admiralty jurisdiction extend to such torts? I am quite clear that it does not. The reason is obvious. Such torts are not marine. They are committed upon land; not upon or within the navigable waters of the river. The test of admiralty jurisdiction over torts is locality, and locality is against the admiralty jurisdiction where the tort is committed upon land. I know of no case in all the books, and the industry of counsel seems to have found none, in which it has been held that the court of admiralty has jurisdiction of any tort committed or *consummated* upon land. There is, of course, a remedy for such torts, but the remedy is in the common-law courts. There must have been in this country collisions without number of vessels with such structures upon land as wharves, quays, piers, business houses, light-houses, upon the shore, etc. Why, then, has no case been produced in which the admiralty has taken jurisdiction of injuries resulting from such collisions? I cannot account for this except by the assumption that such cases have

been, by common consent, regarded as not within the jurisdiction of the admiralty.

Several cases have been decided in the district courts of the United States holding that the jurisdiction in admiralty does not extend to injuries caused by boats and vessels to wharves, piers, and bridges. Thus, in *The Neil Cochran*, 1 Brown, Adm. 162, the court held that "an action will not lie in admiralty against a vessel to recover for damages done to her by a bridge thrown over a navigable stream." In *The Ottawa*, Id. 356, the court decided that "an action will not lie in admiralty against a vessel to recover damage done by her to a wharf projecting into a navigable river." See, also, *The Mary Stewart*, 10 FED. REP. 137. And the supreme court of Michigan, in *The City of Erie* v. *Canfield*, 27 Mich. 479, in an opinion by Judge COOLEY, held that "a boom being a structure pertaining to the adjacent land as much as a wharf or building thereon, assuming that it extends no further out than the land-owner might properly, with due regard to navigation, extend it, a wrongful injury to it would not be a maritime injury, and could not be redressed in a court of admiralty."

It seems to me that the doctrine announced by the supreme court of the United States in the case of *The Plymouth*, 3 Wall. 20, is conclusive of the present question. It is true that this case is not exactly analogous to that of the Plymouth in its circumstances, but we must be guided by the principle upon which that case was decided. In that case, the vessel lying at a wharf in the Chicago river, which was subject to admiralty jurisdiction, took fire, which spreading to certain store-houses on the wharf, consumed them and their stores. It was held not to be a case of admiralty jurisdiction. What was the leading principle of the decision? "It is well observed," says the court, "that the entire damage complained of by the libelants as proceeding from the negligence of the master and crew, and for which the owners of the vessel are sought to be charged, occurred, not on the water, but on the land. The origin of the wrong was on the water, but the substance and consummation of the injury on land." "It is admitted by all the authorities that the jurisdiction of the admiralty over marine torts depends upon locality,—the high seas, or the other navigable waters within admiralty cognizance; and, being so dependent upon locality, the jurisdiction is limited to the sea or navigable waters not extending beyond high-water mark."

Again, the court says the simple fact that the injury originated on the Chicago river, the whole damage having been done upon land, the cause of action, not being therefore complete on the navigable river, could afford no ground for the exercise of admiralty jurisdiction.

From the doctrine thus laid down by the supreme court of the United States in *The Plymouth*, it is apparent that the true question in the case now before us is whether the trespass or tort complained of was committed on land or on navigable water. If it was a trespass upon land, it is not within the admiralty jurisdiction.

It seems by the allegations of the libel that the oil depot where the injury occurred was not on, but near the river, upon the levee of the city of Keokuk; that in an extraordinary and unusual freshet or flood the water rose up to and flowed round the depot; and that, in consequence of unskillful and negligent navigation, the defendant steamboat was propelled and floated with violence against the libelant's property, doing the injury complained of. The plaintiff's property was unquestionably situated upon land, and not upon the water or within the river. It would be doing violence to language to say that the oil depot in question was not upon land. Can we, then, say that because the river, in an extraordinary and unusual flood, rose up to and around the oil depot, and floated the steamer upon the plaintiff's property, the tort complained of was not upon land? Can we say that an injury to property situated undeniably upon land, was, under the circumstances, a tort upon water? If so, all cases of collision by steamboats and other water-craft with wharfs, bridges, quays, depot buildings, business houses, piers, light-houses, etc., are torts committed upon water and not upon land, and therefore within the admiralty jurisdiction; for it is evident that in every such case the water must be sufficient to reach the structure exposed to the collision, and carry the boat or vessel against it. Nay, more: it would follow from the libelant's position that if the boat or vessel should be lifted by a flood over the banks of our great rivers, and carried for many miles over their vast bottoms, to some man's farm, burning his hay-stacks, or destroying his stables, barns, and their contents, the injury thus inflicted would be upon water and not upon land, and the remedy would be in admiralty. Thus the citizen would be deprived of his action at common law and his right of trial by jury, and compelled to accept such redress as a court of admiralty could give him in common with other claimants.

It was settled by the supreme court of the United States in *The Moses Taylor*, 4 Wall. 411, and *The Adam Hine*, Id. 555, that the admiralty jurisdiction of the federal courts is exclusive, and therefore, when we consider the vast extent of lands sometimes flooded by these rivers with a navigable depth of water, we are somewhat startled at the idea that the common-law jurisdiction over torts may be temporarily excluded. And it would appear somewhat anomalous to us that the admiralty jurisdiction should come and go with the rise and subsidence of the river, to be succeeded in its turn by that of the common law, subject to the same accidents.

It seems to me, therefore, that the tort complained of in this case was not upon navigable water, but, in a true and proper sense, upon land. The water was a means or agent by which the boat was floated upon a land structure, but the injury was essentially to an erection upon land, and therefore it may be properly said that the tort was committed, or at least consummated, upon land. Exceptions sustained.