[No. 7004. Decided October 29, 1907.]

A. J. WEST, *Respondent*, v. JOHN I. MARTIN *et al.*, *Appellants.*[1]

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS—COURTS—JURISDICTION—PLEADING—WAIVER. An objection that the court has no jurisdiction, first raised by demurrer, is not waived by failing to except to the order overruling the demurrer, where the answer expressly reserved the point and at the trial the evidence was objected to for the same reason, Bal. Code, § 4911, providing that objection to the jurisdiction can be made at any time.

SAME—APPEARANCE—EFFECT ON JURISDICTION. Objection to the jurisdiction of the subject-matter is not waived by a general appearance.

COURTS—JURISDICTION—BOND—EFFECT. Objection to the jurisdiction of the state superior court over an action to enforce a lien for damages against a vessel is not waived by the giving of a bond for the release of the vessel, conditioned to pay any judgment that might be recovered on the cause of action, where the bond is expressly stated to be a substitute for any security or claim the plaintiff might have against the vessel.

[1]Reported in 92 Pac. 334.

COURTS— JURISDICTION — ADMIRALTY.   Bal. Code, § 5953, giving liens upon vessels for certain demands, including damages for injuries committed within the state, and § 5954, providing that such liens may be enforced "in all cases of maritime contracts or service" by a suit in admiralty, requires that maritime torts be enforced in admiralty, and state courts have no jurisdiction thereof.

ADMIRALTY—JURISDICTION—MARITIME TORTS—COURTS.   An injury by a vessel to the pier of a bridge resting upon the bottom of a navigable stream is a maritime tort, over which the courts of admiralty have jurisdiction; especially if it is alleged that by reason of the injury, the bridge thereafter collapsed and fell into the waters and was broken up, showing that a substantial part of the injury was consummated in the water itself (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered March 26, 1907, upon findings in favor of the plaintiff, after a trial before the court without a jury, in an action to enforce a lien against a vessel for damages.   Reversed.

*J. C. Cross, W. H. Brinker,* and *Richard Saxe Jones (A. Emerson Cross,* of counsel), for appellants.

*John C. Hogan,* for respondent.

HADLEY, C. J.—This action was brought under the statutes of this state in relation to liens against steamers and other vessels.   The purpose of the action is to recover damages alleged to have been sustained by the plaintiff on account of a collision between the steamer Norwood and the plaintiff's bridge.   The complaint shows that the Norwood is an enrolled vessel, the owners and managing owners of which reside in the state of California, and that the plaintiff is the owner of a combination steel and wood drawbridge, together with the approaches belonging to the same, extending across the Chehalis river from Aberdeen to South Aberdeen, in Chehalis county. On the 7th day of May, 1906, the bridge was being used by the plaintiff as a toll bridge for the passage of passengers, street cars, and other traffic.   It is alleged that the bridge was

authorized by the secretary of war of the United States, and that it was a lawful structure in the navigable stream. The bridge was provided with a large swinging span, which was opened by revolving the same upon a central pier constructed in the channel of the river, so that when the bridge was opened it afforded two passageways about one hundred and twenty-five feet in width on each side of the central pier, for the passage of vessels up and down the river.

It is averred that, on the day aforesaid, the defendants were operating the Norwood upon said river, and that while they were engaged in passing the vessel through the draw of said bridge, they negligently ran her against the supporting piers of one of the spans of the bridge, and thereby injured the piers to such an extent that within a few hours thereafter one of the spans fell into the waters of the river and was broken up and almost utterly destroyed. By virtue of the statutes aforesaid, the complaint alleges that plaintiff is entitled to a lien upon the vessel for the damages sustained, and after alleging nonresidence of all the defendants and that the vessel was about to be taken from the state of Washington to some port in the state of California, it was asked that a receiver should be appointed to take charge of the vessel pending the action. The court appointed a temporary receiver to take immediate charge of the vessel, and issued an order that the defendants should show cause why a permanent receiver should not be appointed. Before the time fixed for hearing upon the order to show cause, the defendants applied to the court for discharge of the vessel from the receivership upon their signing a bond to plaintiff in the penal sum of $30,000, conditioned that they would pay any judgment or claim which the plaintiff might establish in said cause of action. Such bond was given, it being expressly stated therein that one of its conditions is that the personal liability of the principals and surety shall be substituted for any security which the plaintiff may have against the vessel. Thereupon the vessel was discharged from the receivership and turned over to the defendants.

The defendants thereafter demurred to the complaint, on the ground that the court has no jurisdiction of the subject-matter of the action, and also that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendant Hulbert was dismissed from the action, and the remaining defendants answered jointly, expressly stating that they did so without waiving their demurrer, and still insisting upon their rights as claimed under the demurrer. The answer admits that the Norwood is an enrolled vessel of about seven hundred and fifty tons gross burden, or about five hundred tons net burden; that the defendants Sudden & Christenson, of San Francisco, California, are the managing owners thereof, and that the defendant Martin is the master of the vessel, but denies any negligence or liability in the premises. The affirmative allegations of the answer are very extensive and need not be enumerated at this time. It was stipulated that the cause should be tried by the court without a jury, and after such trial the court made its findings of facts and conclusions of law and entered judgment that the plaintiff shall recover from the defendants the sum of $13,-751.89, and costs. This appeal is from said judgment.

It is assigned that the court erred in holding that it had jurisdiction. The respondent contends that, for several reasons, appellants have waived this point; (1) for the reason that no exception was taken to the ruling upon the demurrer to the complaint. It is true the record does not show a formal exception entered at the time the order overruling the demurrer was made, but it does show that the demurrer was argued by counsel, and that the court was fully advised, and later, when the answer was presented, it expressly stated in its commencing clause that the appellants answered "without waiving their demurrer herein and still insisting upon their rights as claimed under such demurrer." Furthermore, at the trial, the appellants objected to the introduction of any testimony in support of the complaint, for the reasons stated in the demurrer. This objection was overruled. It is therefore manifest from the

record that appellants did not waive their objections to the jurisdiction as raised by the demurrer, and that the court was fully advised thereof before the trial began. Moreover, under our statute, Bal. Code, § 4911 (P. C. § 378), the objection that the court has no jurisdiction may be raised "at any stage of the proceedings either in the superior or supreme court." (2) For the reason that appellants entered their general appearance in the action. The record discloses a notice of general appearance, filed at a time prior to the filing of the demurrer or answer. If the question here involved were that of jurisdiction of the persons of the appellants, this point would be against them; but if, as they contend, the court had no jurisdiction of the subject-matter of the action, then no appearance they could make could confer jurisdiction. 11 Cyc. 673, 674, and cases cited. (3) For the reason that appellants gave a bond for the release of the Norwood from the hands of the receiver, and that the action then proceeded as an ordinary action at law for damages. It is true the bond stated that the obligors would pay any judgment that should be established upon respondent's cause of action mentioned in his complaint. But it was expressly stated that the personal liability was substituted "for any security or claim which the said plaintiff A. J. West may have against or in the said vessel Steamer Norwood, her tackle, apparel, furniture, engines, boilers, etc." It is therefore evident that if the court had not jurisdiction of the subject-matter of the cause of action stated in the complaint, viz., the enforcement of a lien against the vessel, it could not by virtue of the recitals in the bond enter judgment against the bondsmen whose liability was substituted for that of the vessel on condition that it should be found in said cause that the vessel itself was liable.

The objection of respondent to the consideration of the question of jurisdiction must therefore be denied, and we proceed now to the examination of that subject. It must be said that the determination of the subject is not unattended with difficulty, involving as it does an examination of the Federal

decisions, somewhat difficult to reconcile and apply to the facts of this case. The action was brought in the state court to enforce a lien alleged to exist by virtue of a state statute, Bal. Code, § 5953, the pertinent part of which is as follows:

"All steamers, vessels, and boats, their tackle, apparel, and furniture, are liable,—— . . .

"6. For injuries committed by them to persons or property within this state, or while transporting such persons or property to or from this state.

"Demands for these several causes constitute liens upon all steamers, vessels and boats, and their tackle, apparel, and furniture, and have priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of three years from the time the cause of action accrued."

The next section of the statute, Bal. Code, § 5954 (P. C. § 6081), deals with the procedure for the enforcement of the liens. The section is as follows:

"Such liens may be enforced, in all cases of maritime contracts or service, by a suit in admiralty, in rem, and the law regulating proceedings in admiralty shall govern in all such suits; and in all cases of contracts or service not maritime, by a civil action in any district court of this territory."

It will thus be seen that, if the cause of action here is based upon a maritime tort, then even the state statute requires that it shall be enforced in admiralty. We must therefore determine whether this is a maritime tort or a tort not maritime in its nature. The injured property was a bridge which was suspended over navigable waters and supported by piers planted in the soil beneath such waters. The injury was caused by a moving vessel in said waters. There seems to be no doubt under the decisions that, if the injury had been to the vessel and caused by the bridge, it would have constituted a maritime tort, for the reason that the thing so injured would have been clearly maritime in its character and location. The controversy here is whether the injury to the bridge occurred upon navigable waters and so as to make the tort causing it a

maritime one, or whether the bridge's connection with the soil
and shore rendered it such a land structure as made the injury
nonmaritime. The case of *Milwaukee v. The Curtis*, 37 Fed.
705, decided in the year 1889 by the district court of the
United States for the eastern district of Wisconsin, involved
facts similar to those of this case. A lawfully constructed
bridge spanned the navigable waters of the Milwaukee river.
It was a swinging bridge, its center resting upon a stone
pier constructed upon ·the bed of the river. The bridge was
damaged by a vessel moving in the river. A libel *in rem* was
brought in the Federal court to recover damages. The objec-
tion was made that the court was without jurisdiction of the
subject-matter, and this contention was sustained and the libel
dismissed. It was said in that case:

"In cases of tort locality is the test of jurisdiction in the
admiralty. The ultimate judicial authority has determined
the principle that the true meaning of the rule of locality is
that, although the origin of the wrong is on the water, yet,
if the consummation and substance of the injury are on the
land, a court of admiralty has not jurisdiction; that the place
or locality of the injury is the place or locality of the thing
injured, and not of the.agent causing the injury."

The court held that the bridge was not upon the water be-
cause suspended in space above water, but that it was a mere
prolongation over the water of a highway upon land. The
primary authority upon which the decision was based ap-
pears to have been *The Plymouth*, 3 Wall. 20, 18 L. Ed. 125.
In that case a vessel which was lying at a wharf on waters
subject to admiralty jurisdiction took fire and the fire spread
to certain storehouses on the wharf, consuming the buildings
and their contents. It was held not to be a case for admiralty
jurisdiction. The court said:

"It will be observed, that the entire damage complained of
by the libellants, as proceeding from the negligence of the
master and crew, and for which the owners of the vessel are
sought to be charged, occurred, not on the water, but on the
land. The origin of the wrong was on the water, but the sub-

stance and consummation of the injury on land. It is admitted by all the authorities, that the jurisdiction of the admiralty over maritime torts depends upon locality—the high seas, or other navigable waters within admiralty cognizance; and, being so dependent upon locality, the jurisdiction is limited to the sea or navigable waters not extending beyond high-water mark."

It will be observed that, in *The Plymouth, supra,* the structures injured were not in or over the waters of the navigable channel, and they were held to be upon the land. In application of the reasoning of the supreme court of the United States in said cause, the Federal trial court, in *Milwaukee v. The Curtis, supra,* seems to have been led to hold that a bridge should be classified with the warehouses on the wharf, as being upon land. In that case the court also cited in support of its decision *Ex parte Phenix Ins. Co.,* 118 U. S. 610, 6 Sup. Ct. 25, 30 L. Ed. 274, where it was held that admiralty has no jurisdiction to try the question of damage to buildings on land caused by fire communicated from the smokestack of a vessel. Again, in *Johnson v. Chicago & Pacific Elevator Co.,* 119 U. S. 388, 7 Sup. Ct. 254, 30 L. Ed. 447, the jib boom of a vessel towed by a steam tug in the Chicago river struck a building on land, causing damage to it and the loss of shelled corn stored in it. It was held not to have been a maritime tort of which admiralty had jurisdiction. So far it will be seen that the cases decided by the Federal supreme court have involved injuries to structures wholly upon land or upon a wharf, and have not included bridges over navigable waters. The Federal trial courts have differed in their interpretation of the doctrine of *The Plymouth,* so far as it should be applied to bridges. In the case of *The Arkansas,* 17 Fed. 383, the court reasoned as follows:

"But suppose, on the other hand, the structure, whether bridge, boom, pier, or light-house, be a lawful one; suppose it to be placed in the navigable bed of the river by lawful authority; and suppose some reckless mariner should carelessly run his vessel upon it and injure it; can it be doubted

that the *tort* thus committed would be within the admiralty jurisdiction? Can it be doubted that in such case the owner of the structure might proceed against the owners of the boat *in personam*, or against the boat itself *in rem?* The *tort* itself would be a marine *tort;* it would be, as to place, within the admiralty jurisdiction. The owner of the structure would have a right to proceed *in rem* against the boat, because, from its nature, a maritime lien could attach to the boat."

Again, in the case of *The F. & P. M. No. 2*, 33 Fed. 511, the court approvingly refers to *The Arkansas, supra,* as having declared the law to be,

"that where a structure lawfully created in the navigable channel of a river is injured by a collision caused by the negligent management of a vessel, the owner of such structure may proceed in an admiralty court, by action *in personam* against the owners of the vessel, or *in rem* against the vessel. If this be the law,—and I have no doubt it is,—no reason is perceived why the owner of a raft of logs which is in course of transit on navigable waters, may not proceed *in rem* against a boat or vessel which negligently runs into and destroys or injures the raft."

This is clearly a case where it is our duty to follow the doctrine of Federal decisions, and so far as the above-cited decisions are concerned, we are without any decision from the final Federal authority directly involving such a structure as a bridge over navigable waters under similar facts, and we also find the subordinate Federal courts differing as to the application that shall be made of certain decisions to bridges and similar structures.

The appellants urge that a later decision of the supreme court has modified and practically overruled *The Plymouth* and the other decisions. They cite *The Blackheath*, 195 U. S. 61, 25 Sup. Ct. 46, decided in the year 1904. In that case it was held that admiralty has jurisdiction of a libel *in rem* against a vessel for damages caused by its negligently running into a beacon in a channel, although the beacon is attached to the bottom. So far as we are advised, the above-

cited case is the first one in which the Federal supreme court considered the injury caused by a vessel to a thing attached to the soil and within the channel of a navigable highway. The opinion was written by Mr. Justice Holmes, and it reviews the decisions which seem to bear in any way upon the subject-matter, including the pioneer case of *The Plymouth*, which was decided in 1865. More or less weight seems to have been accorded to all of the decisions in consideration of the particular facts in each case, and no case was expressly declared to be overruled. Some expressions in the opinion seem to us to be significant. Citing with approval *The Arkansas, supra*, the court said:

"But, as has been suggested, there seems to be no reason why the fact that the injured property was afloat should have more weight in determining the jurisdiction than the fact that the cause of the injury was. . . . And again it seems more arbitrary than rational to treat attachment to the soil as a peremptory bar outweighing the considerations that the injured thing was an instrument of navigation and no part of the shore, but surrounded on every side by water, a mere point projecting from the sea."

Referring to the facts in the case of *The Plymouth*, the opinion says:

"Moreover, the damage was done wholly upon the mainland. It never has been decided that every fixture in the midst of the sea was governed by the same rule. The contrary has been supposed in some American cases,"

citing *The Arkansas* and *The F. & M. P. No. 2, supra*; also stating that the same "is indicated by the English books cited above." Having thus clearly distinguished *The Plymouth* from the case then before the court, involving as the latter did a structure attached to land in the midst of the sea, the court further said:

"It is unnecessary to determine the relative weight of the different elements of distinction between *The Plymouth* and the case at bar. It is enough to say that we now are dealing with an injury to a government aid to navigation from an-

cient times subject to the admiralty, a beacon emerging from the water, injured by the motion of the vessel, by a continuous act beginning and consummated upon navigable water, and giving character to the effects upon a point which is only technically land, through a connection at the bottom of the sea. In such a case jurisdiction may be taken without transcending the limits of the Constitution or encountering *The Plymouth* or any other authority binding on this court."

Thus, without discussing the recognized "different elements of distinction" between the two cases, the court confines its discussion to *one* element, viz., that the beacon was a government aid to navigation and subject to admiralty. We believe, however, that views expressed in the opinion—such, for instance, as that it is more arbitrary than rational to treat attachment to the soil, which is only technically land through a connection at the bottom of the sea, as a peremptory bar outweighing other considerations—indicates that, if the injured thing had not been an aid to navigation, but was a mere lawful structure at that place, the injury to it would have been held to have been a maritime one and subject to admiralty. Our interpretation of the opinion in this regard is emphasized by the concurring opinion of Mr. Justice Brown in the same case. We here set forth the concurring opinion:

"I do not dissent from the conclusion of the court, although for forty years the broad language of Mr. Justice Nelson in the case of *The Plymouth*, 3 Wall. 20, has been accepted by the profession and the admiralty courts as establishing the principle that the jurisdiction of the admiralty does not extend to injuries received by any structure affixed to the land, though such injuries were caused by a ship or other floating body. It received the approval of this court in the case of the *Phoenix Insurance Company*, 118 U. S. 610, and in that of the *Chicago & Pacific Elevator Company*, 119 U. S. 388, and has been followed by the courts of at least a dozen different districts, and applied to bridges, piers, derricks and every other class of structure permanently affixed to the soil.

"I do not think this case can be distinguished from the prior ones, as, in my opinion, it makes no difference in principle whether a beacon be affixed to piles driven into the bot-

tom of the river or to a stone projecting from the bottom, or whether it be surrounded by twelve feet or one foot of water, or whether the injury be done to a wharf projecting into a navigable water, or to a beacon standing there, or whether the damage be caused by a negligent fire or by bad steering.

"I accept this case as practically overruling the former ones, and as recognizing the principle adopted by the English Admiralty Court Jurisdiction Act of 1861 (sec. 7), extending the jurisdiction of the admiralty court to 'any claim for damages by any ship.' This has been held in many cases to include damage done to a structure affixed to the land. The distinction between damage done to fixed and to floating structures is a somewhat artificial one, and, in my view, founded upon no sound principle; and the fact that Congress, under the Constitution, cannot extend our admiralty jurisdiction, affords an argument for a broad interpretation commensurate with the needs of modern commerce. To attempt to draw the line of jurisdiction between different kinds of fixed structures, as, for instance, between beacons and wharves, would lead to great confusion and much further litigation."

The above is an interpretation of the necessary force and scope of the main opinion by a member of the tribunal that rendered the decision and who concurred therein. It is true the main opinion distinguishes the former cases, while the concurring opinion does not; but for reasons heretofore stated we believe the distinguishment of the former cases does not lead to a distinguishment of the facts in the case before us from the facts and argument in the decision in *The Blackheath*. Since the rendering of that decision and in the year 1906, the district court of the United States for the southern district of New York, in the case of *Bowers Hydraulic Dredging Co. v. Federal Contracting Co.*, 148 Fed. 290, expressed the view that, by the decision in *The Blackheath*, "the admiralty jurisdiction has been broadened very considerably," and that some of the artificial distinctions that have been heretofore observed as ousting the jurisdiction of admiralty cannot be observed in the future. In that case a dredge whose work was performed partly on land and partly on water was held to be within the admiralty jurisdiction, and the court on

the strength of *The Blackheath* refused to follow the former decisions that would have led to a different result.

The above Federal judicial interpretations of the scope of the decision in *The Blackheath*, we believe we should follow. Especially do we believe we should do so until the final Federal authority may have more definitely stated a contrary view. We therefore believe the facts of this case bring the subject-matter within the admiralty jurisdiction. The point of the immediate contact which precipitated the injury was a pier which it is alleged lawfully stood within the channel of navigable waters. It rested upon soil to be sure, but soil which formed the bottom of the sea and was therefore not land technically speaking. It was as much in the sea as was the beacon in *The Blackheath*. Its locality with reference to the sea was the same as the beacon, and the mere fact that it was applied to another use we believe cannot be material. Even in *The Plymouth* it will be remembered the court said that jurisdiction over maritime *torts* depends upon locality, and that, being so dependent upon locality, the jurisdiction is limited to the sea or navigable waters not extending beyond high water mark. We do not believe it will ever ultimately be held that, for the purposes of jurisdiction, a distinction must be made between a pier which stands in navigable waters and a beacon which stands in the same locality, merely because the pier supports a bridge which spans across the waters to the shore. The pier as the supporting agency, the foundation of the structure, it would seem must draw the structure to its own locality, that of the waters.

In any event, even if it shall be held that we are in error in the foregoing interpretation of the scope of Federal decisions, still there is another element in this case which we think, within the technical distinctions which have been made in the decisions, must bring the case within admiralty jurisdiction. The complaint alleges that the appellants;

"Negligently, carelessly and through failure to exercise ordinary skill in the handling, management and navigation of

said vessel, ran said vessel against the supporting piers of one
of the spans of plaintiff's said bridge and thereby, through the
carelessness and negligence of the defendants' struck, broke
and injured the piers supporting the plaintiff's bridge to such
an extent that within a few hours thereafter one of the spans
of the plaintiff's said bridge collapsed and fell into the waters
of the said Chehalis river and was broken up and almost ut-
terly destroyed."

It is manifest from the foregoing that at least a substantial
part of the resulting injury was consummated on the very
surface of and in the water itself. If the other facts dis-
cussed were not sufficient of themselves to establish a mari-
time locality for the resulting injury, certainly this addi-
tional circumstance must complete the chain of facts neces-
sary to do so. If it be said that the argument upon this
point is technical, it must be said in reply that very technical
distinctions appear to have necessarily formed a part of the
history of the law upon this subject.

The judgment is reversed, and the cause remanded with
instructions to dismiss the action.

DUNBAR, RUDKIN, CROW, MOUNT, and ROOT, JJ., concur.

FULLERTON, J. (dissenting)—I dissent. I think the case
falls within the rule of the case of *Johnson v. Chicago &
Pacific Elevator Co.*, 119 U. S. 388, 7 Sup. Ct. 254, 30
L. Ed. 447, and that the tort committed is within the juris-
diction of the state courts.