## WESTFALL LARSON & CO. et al. v. ALLMAN–HUBBLE TUG BOAT CO. et al.

### No. 7385.

Circuit Court of Appeals, Ninth Circuit.

Oct. 22, 1934.

Chas. A. Wallace, of Seattle, Wash., for appellants.

W. H. Abel, of Montesano, Wash., for appellees Allman-Hubble Tug Boat Co. and Ultican Tug Boat Co.

Theodore B. Bruener, of Aberdeen, Wash., and John Ambler, of Seattle, Wash., for appellee Bar Pilots, Inc.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

On December 27, 1929, the motorship Brimanger, owned and operated by one of the appellants, was towed by the appellees from Aberdeen, Wash., along the Chehalis river, as far as the A. J. West Bridge, enroute to Bay City, Wash. Under the direction of a pilot, two tugs carried on the towing operations, which took place in navigable waters. The Brimanger was without power for navigation purposes.

When the tugs and their tow had reached a point near the West Bridge, across the Chehalis river, it became apparent to the pilot that the Brimanger was approaching dangerously close to the bridge, and that there was

imminent danger of a collision with it. The pilot ordered the Brimanger's port anchor to be dropped. Fifteen fathoms of chain were paid out, causing the anchor to drag and check the swing. Some damage, however, was done both to the Brimanger and to the bridge; and the anchor damaged power cables buried in the bed of the stream.

Some of the cables belonged to the city of Aberdeen, some to Grays Harbor county, and some to the Grays Harbor Railway & Light Company.

In May, 1930, actions were commenced in the superior court of Grays Harbor county, Wash., by the city of Aberdeen and the county of Grays Harbor against the Brimanger for the damage to their respective cables, and, according to the record herein, for the damage to the county's bridge. The printed opinion of the Supreme Court of Washington, however, would indicate that the county's claim was only for the damage to its cables. Grays Harbor County v. The M. S. Brimanger, 171 Wash. 396, 398, 18 P. (2d) 25. The actions were consolidated and tried to the court, resulting in findings in favor of the defendants, the appellants herein, and a judgment dismissing the action. The Supreme Court of Washington, however, reversed the judgment, with directions to the trial court to enter judgment in favor of the city and county for the amounts claimed. Grays Harbor County Case, supra, at page 415 of 171 Wash., 18 P. (2d) 25. The judgment was duly paid and discharged by the appellants herein.

This libel was instituted on August 10, 1933, to recover from the appellees the following items of alleged loss and damage to the Brimanger and her owners:

(1) The damage to the vessel, amounting to $687.98.

(2) The amount of the judgment of the superior court, the costs, attorneys' fees, and necessary disbursements incurred in the defense of the state suits, amounting to $4,416.37.

(3) The sum of $1,250 paid to Grays Harbor Railway & Light Company, in settlement of the damage done to its cables, to prevent suit and attachment of the Brimanger.

The appellees filed exceptions and exceptive allegations to the libel, setting forth that:

(1) As to the first item, the action was barred by the laches of the appellants in instituting their libel more than three years after the collision and beyond the period prescribed by the statute of limitations of the state of Washington. Rem. Rev. Stat. Wash.

§ 159. The appellants' libel ascribes no reason for the delay.

(2) As to the second and third items, the court had no jurisdiction in admiralty. The appellees contend that the bridge and the power cables are land structures used in land commerce, and that consequently an injury to such structures does not constitute a maritime tort.

The court dismissed the libel on the grounds set forth in the exceptions and exceptive allegations, and entered a decree against the appellants, from which decree the present appeal is being prosecuted.

■ With reference to the defense of laches, the appellant contends that it "ought to be pleaded as a defense and not raised by exceptions." In support of this position, three cases are cited. We believe none of these cases is authority here.

In Green Star S. S. Co. v. Nanyang Bros. Tobacco Co., 3 F.(2d) 369, 370, this court had before it a "limitation clause" stipulated "between the parties," in an action at law. The question of laches in equity was in no way involved.

The appellant's quotation from Stiles v. Ocean S. S. Co. (C. C. A. 2) 34 F.(2d) 627, 629, shows that the question of the manner in which the defense of laches should be presented was not there before the court. We find no reference in the decision on the subject of the pleading of laches.

Finally, we are referred, no doubt inadvertently, to the case of United States Shipping Board E. F. Corp. v. Rosenberg Bros. & Co. (C. C. A. 9) 12 F.(2d) 721, 724. There we find the statement that "if respondents relied upon that defense [laches], they should have pleaded accordingly." That decision, however, was reversed. 276 U. S. 202, 214, 48 S. Ct. 256, 258, 72 L. Ed. 531. In that case, the Supreme Court said:

"It follows that after the passage of the act no libel in admiralty could be maintained against the United States or the corporations on such causes of action except in accordance with its provisions; and that as the libels in these cases were not brought against the Fleet Corporation within the period prescribed by section 5 [see 46 USCA § 745] they were barred. And although, as the libelants point out, this was not 'pleaded in any of the answers,' it was aptly and sufficiently pleaded in the exceptions to the libels, which correspond to demurrers in actions at law."

The propriety of exceptions and exceptive allegations to present to the court the fact that a claim is stale, has been repeatedly recognized. In The Seminole (D. C.) 42 F. 924, 925, the following language was used:

"But the case is now before the court upon exceptions, and the facts above referred to as judicially known to the court do not appear in the libel. I do not see, therefore, how, upon the exceptions alone, as they stand, the libel can be dismissed. I am, however, of the opinion that a claimant may, in an exceptive allegation attached to exceptions, bring before the court facts judicially known to the court."

A fortiori, if the facts showing staleness appear on the face of the plaintiff's pleadings, the defendant should be able to urge the defense of laches by exceptions or exceptive allegations. Such procedure was specifically sanctioned in Independent Transp. Co. v. Canton Ins. Office (D. C.) 173 F. 564, 566, in which the court said:

"The fourth exception is for alleged waiver of the right to abandon, by excessive delay without any valid excuse. It appears from the record that the vessel sank on the 15th of December, and the owner had notice of the happening on the 16th. The notice of abandonment was given four months thereafter, which was three months after the vessel had been raised, and two months after she had been cleaned, so as to be in condition for inspection and survey of damages. For cogent reasons, the insured party is required to act promptly in giving notice of abandonment, when it is intended to claim for a constructive total loss; and, without reasons justifying delay for the period which elapsed in this instance, the insurers have justice on their side in claiming that the right to abandon was waived. The fourth exception is sustained by the court."

See, also, Stampalia v. Murphy (D. C.) 34 F.(2d) 660, 661; 3 Rose's Code of Federal Procedure, Admiralty Forms 272 and 273, pages 2613, 2614.

■ We next address our attention, therefore, to the defense of laches, on its merits.

The appellants concede that they could have commenced their libel against the appellees for the physical damage to the vessel, before the expiration of the three-year statute of limitations. They ascribe in their brief the following reason for not doing so:

"* * * This would have necessitated the bringing of this action for the damages here claimed and it is appellants' contention that it [the Brimanger] had a right, under the admiralty rules and the maritime law, to

wait until the litigation in the State Court had been settled and then commence its libel for the whole damage suffered, and that it is not guilty of laches in so doing."

This statement, we believe, reflects the appellants' misconception of their rights. They assume that a suit for the recovery of the amount they were forced to pay under the judgment against them in the state courts, could properly have been sought in a court of admiralty. As we shall presently see, such view is erroneous.

Furthermore, there is evidence in the record that the appellees might have been lulled into security as to any damage to the vessel, by the appellants' own representations.

On May 27, 1930, the appellants, through their proctors, notified the appellees of the state suits instituted by the city of Aberdeen and the county of Grays Harbor. The first two sentences of the letter of notification were as follows:

"On December 27th, 1929, you furnished a pilot and supplied two tugs, namely the 'Tyee' and 'Tus[s]ler', to move the M/S 'Brimanger' up the Chehalis River and through the A. J. West Bridge at Aberdeen, Washington. During the operation of moving the M/S 'Brimanger', the tugs were so badly damaged that the M/S 'Brimanger', being without power of her own, was caused to drop her anchor to prevent serious damage to the A. J. West Bridge."

The foregoing statement might well have led the appellees to believe that the vessel was not damaged, since, if such was the case, it would have been natural for the appellants' proctors to have mentioned such damage in connection with the damage to the tugs.

While we believe that this circumstance might well have been considered in this case, we are not basing our decision thereon. It is in the nature of estoppel, and has not been pleaded by the appellees. The determining factor in the instant litigation is, in our opinion, the fact that the appellants waited for more than the period prescribed by the state statute of limitations for actions dealing with damage to personal property, before filing their libel, and have failed to show any "exceptional circumstances" justifying the delay.

The law is well settled that, in the absence of a showing of such "exceptional circumstances," a court of admiralty, in determining the question of laches, will be governed, "by analogy," by the state statute of limitations covering actions of the nature disclosed by the libel.

In Davis v. Smokeless Fuel Co. (C. C. A. 2) 196 F. 753, 755, 756, certiorari denied 229 U. S. 617, 618, 33 S. Ct. 777, 57 L. Ed. 1353, the court said:

"Still courts in admiralty proceed upon the analogy of the statute in considering whether claims are stale. Nesbit v. The Amboy (D. C.) 36 F. 925. If because of the absence of the respondent or any of its property from the jurisdiction of the court the libelant had not been able to bring suit within six years, the court might not treat his claim as barred. The reason given for the delay in this case is entirely insufficient, namely, that the libelant was awaiting the result of a similar case to which he was not a party, pending in a court in another jurisdiction."

Again, in Lincoln v. Cunard S. S. Co. (C. C. A. 2) 221 F. 622, 624, we find the following language:

"The rule in courts of admiralty is that, where there is nothing exceptional in the case, the court will govern itself by the analogies of the common-law limitations."

The rule was lucidly expounded by Judge Grubb in McGrath v. Panama R. Co. (C. C. A. 5) 298 F. 303, 304:

"Courts of admiralty are not, however, bound by common-law limitations, but adopt them by analogy, unless equitable reasons exist for not doing so. * * *

"The appellant suggests that no injury is shown to have been done to the appellee by the delay in filing the libel. Injury is presumed from the statutory period of limitation in common-law actions, and, when equity adopts the statutory period, it adopts along with it the presumption of injury until the contrary is shown."

"Very exceptional" circumstances were declared necessary to relieve the libelant from the application of the "analogy" rule, in The Little Charley (D. C.) 31 F. (2d) 120, 122.

See, also, Scull v. Raymond (D. C.) 18 F. 547, 553; Southard v. Brady (C. C.) 36 F. 560, 561; The Southwark (D. C.) 128 F. 149, 150, 151; Cresci v. Standard Fisheries (D. C.) 7 F.(2d) 378; The City of Atlanta (D. C.) 17 F.(2d) 311, 313; The Fort Gaines (D. C.) 24 F.(2d) 438, 439; Christianssand Shipping Co. v. Marshall (C. C. A. 3) 31 F. (2d) 686, 687; Marshall v. International Mercantile Marine Co. (C. C. A. 2) 39 F.(2d) 551, 552; The Owyhee (C. C. A. 2) 66 F. (2d) 399, 401; 1 Benedict on Admiralty (5th Ed.) § 471, pages 554, 555.

We advance, finally, to the items in the libel dealing with the money paid by the appel-

lants in satisfaction of the state judgment and also the sum paid by them in settlement of the claim of the Grays Harbor Railway & Light Company, for the damage done by the Brimanger to the bridge and the power cables.

■ In the first place, the rule is well settled that admiralty has no jurisdiction over nonmaritime transactions following the execution of maritime contracts.

The appellants concede that they are suing in tort; but they contend that "the whole damage suffered by libelants resulted in and from the breach of their contract of towage made with respondents [appellees]."

In United Transp. & L. Co. v. New York & Baltimore T. Line (C. C. A. 2) 185 F. 386, 389, 390, the court said:

"When a maritime contract is broken, the admiralty can only award damages for its breach. This is the remedy which a court of law would give; but a court of admiralty in granting it acts in no sense as a court of common law. The admiralty grants relief, legal in its nature, when, and only when, the subject-matter of the suit is maritime. Admiralty has jurisdiction over maritime contracts, but it has none over contracts leading up to the execution of maritime contracts. And, upon similar principles, it can have no jurisdiction over nonmaritime transactions following the execution of maritime contracts."

See, also, Home Ins. Co. v. Merchants' Transp. Co. (C. C. A. 9) 16 F.(2d) 372, 373.

■ The appellants also concede that the damage sustained by the city of Aberdeen and the county of Grays Harbor was "not cognizable in an admiralty court"; but they contend that, as to them, the alleged "negligence" of the appellees that caused the damage was a "marine tort" "wholly within the admiralty jurisdiction."

There can be no doubt that the damage inflicted by the Brimanger upon the bridge and the power cables constituted a nonmaritime tort.

The case of Martin v. West, 222 U. S. 191, 197, 32 S. Ct. 42, 43, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592, involved the identical structure that was damaged in the instant case; namely, the A. J. West Bridge, A. J. West, at that time, the owner of the bridge, being the plaintiff in the former cause. West v. Martin, 47 Wash. 417, 418, 92 P. 334. In Martin v. West, there was a collision of the steamer Norwood with a supporting pier of the toll drawbridge, caused by the negligent management of the vessel by her master and owners.

Of such a tort, the court said:

"It may be that the damage ensuing from the collision was aggravated by the fact that the span fell into the stream and was subjected to the force of the current, and submerged in the water; but, if that be so, it furnishes no criterion for determining whether the tort was maritime or nonmaritime, because that question must be resolved according to the locality and character of the injured thing—the bridge, with its spans and supporting piers—at the time of the collision. It was then that the causal influence of the negligent management of the vessel took effect injuriously and gave rise to a cause of action; and what followed is important only as bearing upon the extent of the injury and resulting liability. * * *

"As the bridge was essentially a land structure, maintained and used as an aid to commerce on land, its locality and character were such that the tort was nonmaritime [cases cited]; and consequently it was admissible to pursue in the state court the remedy provided by the state statute, even though that law gave a lien on the vessel."

In Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 476, 42 S. Ct. 157, 158, 66 L. Ed. 321, 25 A. L. R. 1008, the rule was thus succinctly stated:

"The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this Court that it must now be treated as settled. [Many cases cited.]"

See, also, The Plymouth, 3 Wall. (70 U. S.) 20, 33, 18 L. Ed. 125; Ex parte Phenix Insurance Co., 118 U. S. 610, 618, 7 S. Ct. 25, 30 L. Ed. 274; Johnson v. Chicago, etc., Elevator Co., 119 U. S. 388, 397, 7 S. Ct. 254, 30 L. Ed. 447; Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 643, 20 S. Ct. 824, 44 L. Ed. 921; Homer Ramsdell Co. v. Comp. Gen. Trans., 182 U. S. 406, 411, 21 S. Ct. 831, 45 L. Ed. 1155; Phœnix Construction Co. v. The Poughkeepsie, etc., 212 U. S. 558, 29 S. Ct. 687, 53 L. Ed. 651; Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 59, 60, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; The Raithmoor, 241 U. S. 166, 174, 36 S. Ct. 514, 60 L. Ed. 937; State Industrial Com. v. Nordenholt Co., 259 U. S. 263, 273, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Washington v. W. C. Dawson & Co., 264 U.

S. 219, 227, 44 S. Ct. 302, 68 L. Ed. 646; The Panoil, 266 U. S. 433, 435, 45 S. Ct. 164, 69 L. Ed. 366; London Co. v. Industrial Commission, 279 U. S. 109, 123, 124, 49 S. Ct. 296, 73 L. Ed. 632; Crowell v. Benson, 285 U. S. 22, 55, 52 S. Ct. 285, 76 L. Ed. 598.

In addition to Martin v. West, supra, there are at least two other decisions by the Supreme Court holding that a bridge is a land structure, and that damages inflicted thereon give rise to a nonmaritime tort, not cognizable in admiralty. Cleveland Terminal & V. R. Co. v. Steamship Co., 208 U. S. 316, 320, 321, 28 S. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215; and The Troy, 208 U. S. 321, 323, 28 S. Ct. 416, 52 L. Ed. 512.

This court has already decided that power cables resting upon the floor of a bay are land structures, and that damages to such submarine cables are not recoverable in admiralty. In Nippon Yusen Kabushiki Kaisha v. Great Western Power Co. (C. C. A.) 17 F. (2d) 239, 241, certiorari denied 274 U. S. 745, 47 S. Ct. 591, 71 L. Ed. 1325, we said:

"Suppose that such a structure as is called a 'cable' was made to contain within a waterproof casing a steel shaft (or a linked and flexible propeller chain), which upon being revolved by means stationed on one shore, communicated power to a machine located on the opposite bank of a narrow though navigable strait: Would the fact that the shaft was covered with a material impervious to water, and was strung along the floor or bottom of the strait, give it a marine character and entitle damages for its injury to be recovered in admiralty? The question, we think, must be answered in the negative. There can be no difference in legal estimation between the wire core through or along which electric energy is made to travel, and the revolving shaft which communicates physical impulses from bank to bank."

We are unable to follow the appellants' reasoning that recovery of a sum paid in satisfaction of a judgment rendered in a suit for nonmaritime tort can be sought in admiralty. It is conceded, as we have pointed out, that the suits by the city and county, in the state court, were based on "damage * * * not cognizable in an admiralty court." It is difficult to see how a nonmaritime tort can be transformed into a maritime tort by the mere expedient of seeking reimbursement for the payment of the nonmaritime judgment.

We hold that the court below was correct in dismissing the libel for laches as to the alleged damage to the vessel, and for lack of jurisdiction as to the appellants' demand for reimbursement for sums paid out by it in connection with the suits in the state court.

Decree affirmed.