## The Brig "City of Erie" v. John Canfield and another.

*Water craft: Statute construed: Admiralty jurisdiction.* The statute (*Comp. L. 1871, ch. 210*) providing for the collection of demands against water craft was intended to give a remedy in all cases coming within its provisions in other particulars, where the vessel at the time was navigating the waters of the state, and where no remedy could be had in admiralty, and is not confined to water craft used or intended to be used exclusively in navigating the waters of this state; and the fact that the vessel was upon a voyage from a port outside the state would be of no importance, except as it bore upon the question of admiralty jurisdiction.

*Boom : Navigable waters: Nuisance : Floatage of logs: Public use of stream.*
The fact that a boom in the Manistee river embraced a portion of the navi-
gable waters capable of being navigated by large vessels, does not necessarily
constitute it a nuisance which may be abated by force; in any rules laid down
for the public use of such a stream, the necessity and convenience of the float-
age of logs, and the need of booming facilities to render that floatage of value,
must be considered.

*Boom : Impediment to navigation : Question of fact.* Upon the question whether
the boom in this case was an unnecessary impediment to navigation, the circuit
judge having examined the question elaborately, and reached the conclusion
that it was not, and the evidence on which he acted not being returned, and
the question being a complicated one, depending upon the particular facts, and
the necessities and conveniences of the respective interests, which the circuit
judge was in a position to consider and compare, and which this court is not,
his conclusion is adopted as correct.

*Boom : Riparian rights : Admiralty jurisdiction.* The boom in this case being a
structure pertaining to the adjacent land, as much as a wharf or building
erected thereon, and assuming that it extended no farther out than the
land owner, with due regard to navigation, might properly extend it, a
wrongful injury to it would not be a marine injury, and could not be redressed
in a court of admiralty.

*Heard January 14.  Decided July 22.*

*Certiorari* to Manistee Circuit.

*S. W. Fowler*, for plaintiff in *certiorari*.

*Ramsdell & Benedict*, for defendants in *certiorari*.

COOLEY, J.

This case is brought into the court by *certiorari* to the
circuit court for the county of Manistee.

In the court below the defendants in error were com-
plainants, and proceeded against the brig under the act to
provide for the collection of demands against water craft,
approved February 5th, 1864.—*Laws 1864, p. 107 ; Comp.
L. 1871, p. 1861.* The demand set forth in their complaint
was that the brig, on the fifth day of June, 1868, " while
navigating the waters of the state of Michigan, at the port
of Manistee, in the county of Manistee aforesaid, in the
employment and business of commerce and navigation
between the port of Manistee and the port of Chicago, in
the state of Illinois, upon the lakes and navigable waters
connecting said lakes, by reason of the misconduct and neg-

ligence of the master and employes of said brig, and by reason of lack of skill, care and attention in the management of said brig by said master and employes, and by reason of the insufficiency and unseaworthiness of the rudder of said brig, was deflected and turned from its due and proper course, into and against the boom, and into and against the saw-logs of complainants, whereby said boom was broken, and said saw-logs were released, scattered, damaged and lost, to the number of about six hundred logs." The case was contested on both the law and the facts, in the circuit court, but the claim was sustained, and a judgment rendered in favor of complainant for six hundred and eighty-four dollars.

In this court the cause was argued on jurisdictional questions only. It is claimed that the cause was within the admiralty jurisdiction of the federal courts, and, consequently, that no state court could have or be vested with jurisdiction of the same. Also that the case was not within the act above referred to, which only authorizes proceedings against water craft "used or intended to be used in navigating the waters of this state;" whereas, the vessel in question was navigating the waters of both Michigan and Illinois. And further, that the evidence shows that the boom in question extended into, and embraced a considerable portion of the navigable part of the Manistee river at the point where the injury occurred, and was placed there by complainants without authority of law, and constituted a public nuisance, and an injury to, or destruction of it could give no claim to compensation.

The fact the brig was upon a voyage from a port outside the state seems to me unimportant, except as it may bear upon the question of admiralty jurisdiction. The act referred to was unquestionably intended to give a remedy in all cases coming within its provisions in other particulars, where the vessel at the time was navigating the waters of the state, and where no remedy could be had in admiralty. The act is not confined to water craft used or

27 MICH.—61.

intended to be used exclusively in navigating the waters of this state, and the brig in question was in this particular strictly within the terms of the act, and if there is no admiralty jurisdiction, is within the reason for its enactment, notwithstanding a part of its voyage was upon the waters of another state.

The fact that the boom embraced a portion of the navigable waters of the Manistee river, capable of being navigated by vessels like this, does not necessarily constitute it a nuisance which may be abated by force.  It appears by a map which is in evidence by stipulation, that the boom is in the river between Manistee City (then a considerable village) and the lake, and it would seem from the judge's opinion, which is returned, that considerable evidence was taken to show its necessity, and whether it did or did not constitute an unnecessary impediment to navigation.  The circuit judge examined this question elaborately, and reached the conclusion that it did not.  The evidence on which he acted is not returned, and the correctness of his conclusion on its weight and credibility has not been argued.  It is clear that on a river like the Manistee, which is navigable by steamers for a long distance, but down which logs by the million are floated and gathered in booms every season—where, in fact the principal industry consists in cutting, floating, and manufacturing into lumber the forests in its vicinity, and where the river is more valuable for this floatage than for any other navigation; the necessity and convenience of this floatage must be considered in any rules laid down for the public use of the stream, and the need of booming facilities to render the floatage of value. Indeed, to take away the privilege of booming would be to strike a fatal blow at the principal commerce on the stream; for the vessels which ply between Manistee and other ports are loaded principally with the lumber which the mills along the shores of Manistee lake and river are enabled, by means of the privilege of floating and booming logs upon these waters, to manufacture and place upon the market.

It is just and reasonable, therefore, and conducive to the best interests of commerce, that the right of navigating the river should be exercised with due regard to the necessity for booming facilities, and the former is not so far paramount as to render the latter a nuisance whenever and wherever it encroaches upon waters navigable by the large vessels which enter this stream. The question whether a nuisance or not, is complicated; it must depend in any case upon the particular facts, and the necessities and convenience of each interest must be considered and compared before the proper conclusion can be reached. The circuit judge was in position to do this, but we are not. In his opinion the boom is spoken of as having been in existence for eighteen years, and it is fair to presume that persons navigating the stream would long since have taken steps for its removal if they found it more an impediment than an aid to the commerce thereon.

If we are correct so far, we do not see how there can have been jurisdiction in admiralty for the negligence complained of. The tort consisted in an injury to a structure which pertained to the adjacent land just as much as a wharf or a building erected thereon would have done. It must be assumed on this record, where we cannot review the facts, to have extended no farther out than the land owner, with due regard to navigation, might properly extend it. If this is so, a wrongful injury to it would not be a marine injury, and could not be redressed in the court of admiralty. And in this view the extent or point of commencement of the voyage would be immaterial.

The proceedings must be affirmed, with costs.

GRAVES, J., and CHRISTIANCY, CH. J., concurred.

CAMPBELL, J.

I regard the statute in question as designed to authorize proceedings analogous to those in admiralty, and to cre-

ate a lien not enforceable in any other way. It seems to me to come clearly within the cases cited on the argument, in which the supreme court of the United States has held such legislation invalid, as well as against those which hold that vessels enrolled and licensed for the coasting trade cannot be subjected by state legislation to liabilities and burdens which shall affect the title, or charge the vessel as such, and not through its owners.

I think the proceedings void.