CITY OF MILWAUKEE *v.* THE CURTIS, THE CAMDEN, AND THE WELCOME.

*(District Court, E. D. Wisconsin.* February 5, 1889.)

ADMIRALTY—JURISDICTION—TORTS—INJURY TO BRIDGE—STATE LIENS.

A court of admiralty has no jurisdiction of a libel *in rem* against vessels navigating a river, for damage negligently caused by them to a swing-bridge resting on a pier, constructed on the bed of the river; nor can a state statute creating a lien for all injuries done by vessels to persons or property confer such jurisdiction.

In Admiralty.

Libel *in rem* by the city of Milwaukee against the steam-barge Curtis, the schooner Camden, and the steam-tug Welcome, for injuries to a bridge.

*Eugene S. Elliott,* for libelant.

*Alfred H. Bright* and *M. C. Krause,* for respondents.

JENKINS, J. The libelant, a municipal corporation, lawfully constructed and maintained a bridge spanning the navigable waters of the Milwaukee river. The structure was a swing-bridge, its center resting upon a stone pier constructed upon the bed of the river. On the 18th of October, 1888, the bridge was damaged by the alleged negligent conduct of the vessels, respondents, then navigating the river. The libel is *in rem* to recover the damages incurred. It is objected for the respondents that the court is without jurisdiction of the subject-matter. In cases of tort locality is the test of jurisdiction in the admiralty. The ultimate judicial authority has determined the principle that the true meaning of the rule of locality is that, although the origin of the wrong is on the water, yet, if the consummation and substance of the injury are on the land, a court of admiralty has not jurisdiction; that the place or locality of the injury is the place or locality of the thing injured, and not of the agent causing the injury. *The Plymouth,* 3 Wall. 20; *Ex parte Insurance Co.,* 118 U. S. 610, 7 Sup. Ct. Rep. 25. Within this settled principle a tort is maritime, and within the jurisdiction of the admiralty, when the injury is to a vessel afloat, although the negligence causing the injury originated on land. *The Rock Island Bridge,* 6 Wall. 213; *Leonard* v. *Decker,* 22 Fed. Rep. 741. In the former case it was ruled that an action *in personam* would lie against the owners of the bridge, because the injury was consummate upon navigable waters, being inflicted upon a movable thing engaged in navigation; but that a proceeding *in rem* against the bridge was not maintainable, because a maritime lien can only exist upon movable things engaged in navigation, or upon things which are the subjects of commerce on the high seas or navigable waters. And so an injury happening through default of the master to one upon a vessel discharging cargo at a wharf to which she was securely moored, is within the admiralty jurisdiction, (*Leathers* v. *Blessing,* 105 U. S. 626;) but otherwise, if the injury occurred to one upon the wharf, (*The Mary Stewart,* 10 Fed. Rep. 137.) In the latter case there is an in-

advertent remark to the effect that both the wrong and the injury must occur upon the water,—a proposition not sustained by authority. It suffices if the damage—the substantial cause of action arising out of the wrong—is complete upon navigable waters. *The Plymouth, supra.* It is insisted for the libelant that because this injury happened in the midst of, or in space above, the water, it must be held to have occurred upon the water, and the bridge must be held to be personal property on navigable waters. This contention cannot be upheld. In legal signification land includes not only the surface of the earth, but all under it or over it. It is otherwise with respect to the sea. A suspension bridge is not upon the water, because sustained in space above the water. Nor in any juster sense is a bridge upon the water, because supported upon masonry resting upon the bed of a river. Bridges are merely prolongations over waters of highways upon land. They are not afloat. Like wharves and piers, they are connected with the shore. Unlike wharves and piers, they are obstructions, not aids, to navigation. They concern commerce upon land, not upon the sea. Within the intendment of the maritime law they are—equally with wharves and piers—structures upon or connected with the shore. They pertain to the land, not to the sea; and so are without the cognizance of the admiralty jurisdiction. An injury thereto cannot be said to have occurred upon water. The cause of the injury was a movable thing navigating the waters; but the consummation of the wrong was upon an immovable structure above the waters, attached to the land, and not afloat. The absence of admiralty jurisdiction over injuries to such structures is sustained by an overwhelming weight of authority. As to a bridge: *The Neil Cochran*, 1 Brown, Adm. 162; *The Savannah*, (U. S. D. C. Pa., CADWALLADER, J., not reported, but referred to in 1 Pars. Shipp. & Adm. 532.) As to a wharf: *The Plymouth*, 3 Wall. 20; *The Ottawa*, 1 Brown, Adm. 356; *The C. Accame*, 20 Fed. Rep. 642. As to a derrick resting on the soil at the bottom, and in the midst of the water: *The Maud Webster*, 8 Ben. 547. As to a marine railway: *The Professor Morse*, 23 Fed. Rep. 803. As to a boom of logs, anchored or fastened to the shore: *City of Erie* v. *Canfield*, 27 Mich. 479. The latter is perhaps an extreme case, and seems opposed upon principle to the case of *The Ceres*, (E. D. Pa.) 7 Wkly. Notes Cas. 576, to the effect that the admiralty has jurisdiction of an injury by a tug boat to a dry dock floating on a navigable river and moored to a wharf. To deny jurisdiction for injuries to such structures by vessels, while asserting it with respect to injuries to vessels by such structures—as in *The Rock Island Bridge, supra; Etheridge* v. *Philadelphia*, 26 Fed. Rep. 43; *Atlee* v. *Packet Co.*, 21 Wall. 389—may seem a narrow construction of the admiralty jurisdiction. It is likened to the refusal of the admiralty at one time to assert jurisdiction of contracts of maritime insurance made on land and to be performed on land, but touching the perils of the sea, now held to be within the jurisdiction of the admiralty, (*Insurance Co.* v. *Dunham*, 11 Wall. 1;) or of contracts of affreightment, made on land, but to be performed upon water, now of undoubted admiralty jurisdiction, (*Navigation Co.* v. *Bank*, 6 How. 344; *Morewood* v. *Enequist*, 23

How. 493.) The distinction grows out of the peculiar and restricted nature of the admiralty jurisdiction as touching things "pertaining to the sea." In *The Arkansas*, 17 Fed. Rep. 383, 386, it is asserted that an injury to a bridge would be a marine tort, and that a proceeding *in rem* would lie against a boat causing the injury. No authority is cited in support, and I find none justifying the statement; probably because the case in the language of the court in *The Plymouth*, in answer to similar argument respecting wharves, "is outside the acknowledged limit of admiralty cognizance over marine torts, among which it has been sought to be classed." The statement by Judge LOVE is *obiter dictum*, and is difficult to be reconciled with his argument elsewhere in his opinion (page 389) in support of the cases denying jurisdiction. Notwithstanding my learned predecessor in the case of *The F. & P. M. No. 2*, 33 Fed. Rep. 511, 515, speaking *obiter*, approved the *obiter dictum* in *The Arkansas*, I am impelled to say with Judge NIXON in *The Professor Morse*, 23 Fed. Rep. 803, 807, that "however much I might be inclined, if the question were an open one, to follow this *obiter dictum* of the learned judge, I am constrained by the authority of *The Plymouth*, 3 Wall. 20, to hold in the present case that the libelants have mistaken their court, and that the remedy for the injury complained of is to be found only in the courts of common law." If it be expedient to clothe the admiralty with jurisdiction of all torts committed by vessels, whether the resulting damage occur upon land or water, as now it hath jurisdiction over damage to vessels whether the wrongful act causing damage originate on land or water, the object must be promoted—as it has come to pass in England—through the legislative, not the judicial, power. Courts sit *dicere et non dare legem*. Settled principles of jurisdiction may not be changed to meet individual notions of right. Nor can the jurisdiction be aided by the statute of the state creating a lien for all injuries done by vessels to persons or property. Rev. St. Wis. § 3348, subd. 4. A state statute cannot confer jurisdiction upon courts of admiralty. It is only when the subject is maritime, and so within the jurisdiction of the admiralty, that a lien granted by local law will be recognized. The libel will be dismissed for want of jurisdiction.