McMORRAN v. THE MILLINOKETT.

1. Admiralty—Maritime Jurisdiction—Water Craft—Navigation
   —Lien for Wharfage.

   In a suit under 3 Comp. Laws 1915, § 14892, to enforce a
   lien against a ship which anchored in the St. Clair river
   in front of complainant's property, awaiting to unload at
   an adjacent wharf, and remaining there 37 days, while
   ten boats that preceded it discharged their cargoes, the
   State court had no jurisdiction to enforce the statutory
   lien for wharfage; the vessel was engaged in maritime
   business and the claim could only be enforced in the ad-
   miralty courts.

2. Same—Carriers.

   The general rule is that the liability of carriers as such
   terminates with the service of transportation after a rea-
   sonable time and opportunity for the consignee to remove
   the freight: in order to enforce a lien under the statute,
   the vessel must be in nonmaritime business. Under the
   circumstances, a delay until the preceding boats had un-
   loaded was not unreasonable.

Appeal from St. Clair; Tappan, J. Submitted Jan-
uary 18, 1916. (Docket No. 58.) Decided March 31,
1916.

Bill by Henry McMorran to enforce a lien under
the water-craft law against the steamer Millinokett.
From a decree for defendant, complainant appeals.
Affirmed.

*Lincoln Avery* and *George L. Canfield,* for complain-
ant.

*P. H. Phillips* and *Goulder, White & Garry,* for de-
fendant.

The complainant seeks by this proceeding to enforce
the lien given by statute (section 10789, 3 Comp. Laws;

section 13625, 5 How. Stat. [2d Ed.] ; 3 Comp. Laws 1915, § 14892), the so-called water-craft act. The defendant ship, on December 3, 1913, anchored in the St. Clair river opposite the complainant's property, and made a line fast to his dock. The complainant protested to the ᵥcaptain against his lying there, and told him he would insist upon his paying $50 a day if he continued to lie there. The captain at once shifted his line to neighboring property, and refused to move, and the plaintiff protested to the owners, without avail. The ship was loaded with grain consigned. to the Grand Trunk elevator in Port Huron, and on January 9th moved up to the elevator, and was relieved of her cargo on the 10th. The complainant submitted a bill for $1,850 to cover the 37 days the ship lay opposite his premises. The owners refused to pay, and this suit was commenced.

The complainant's premises are 300 feet wide, and the ship, which was 524 feet long, overlapped them from the north about 250 feet. There were a boat-house and small pier on the extreme north end of the lot, and the above-mentioned dock on the south end. The ship lay about 60 feet out into the stream, with her stern 50 feet above the dock. This dock was considerably out of repair, and had not been used as a landing. place by a boat of any considerable size for about three years. It was a small dock, constructed primarily for the personal convenience of the complainant. No attempt had been made to use it, even by rowboats or launches, while the ship lay there, so far as the record shows, and it seems clear that the ship would not have interfered with such an attempt. There was a space of 60 feet between the ship and the dock line, and ice was floating in the river, and navigation had practically ceased.

The complainant contends that the ship had laid up there for the winter, intending to use his property for

a winter berth, because she had dismantled her engines and boilers, and discharged her crew. The bill of lading provided that the cargo was to be unloaded not later than April 1st. The Millinokett was one of a fleet of eleven grain carriers with cargoes for the same elevator, and they all dropped anchor as near below the elevator as possible, by direction of the man in charge, to minimize the difficulties in bringing the boats up to the elevator that might result from the blocking of the ice. The carriers were unloaded according to the requirements of the railroad contracts for delivery at the seaboard, in no definite order, and at no definite time. After the Millinokett was unloaded she was moored for the winter a short distance below the elevator.

The claim of the complainant is based upon his notice to the captain and the owners under the following section of the water-craft law:

"Every water craft of above five tons burthen, used, or intended to be used, in navigating the waters of this State, shall be subject to a lien thereon: * * * *Second.* For all sums due for wharfage, anchorage, or dock hire, including the use of dry docks; the lying immediately in front of, or attached to any wharf, dock, or pier, within this State, so as to prevent the use of any portion of such wharf, dock, or pier, by other water craft, with or without the discharge of freight or passengers across such wharf, dock, or pier, after a notice to leave, shall be an evidence of an agreement to pay for such use whatever the same may be worth."

Counsel for the defendant contend that the decision of the lower court in their favor should be affirmed on any one of three grounds:

(1) The court was without jurisdiction of the proceeding.
(2) The lying in front of the complainant's premises was an incident of navigation, and interstate com-

merce to which the State statute could not attach a penalty.

(3) If the statute had any application, there was no proof of damage upon which a recovery could be based.

The circuit judge dismissed the complaint because no damage was shown, considering it unnecessary to pass upon the question of jurisdiction.

PERSON, J. (*after stating the facts*). Whether or not the complainant succeeded in showing such damages as would have entitled him to compensation in a proper proceeding, in our opinion, under the facts in this case, the court below had no jurisdiction of the matter. Though the complainant claims that the ship ceased navigation on December 3d, laid up for the winter opposite his premises, and became subject to a lien for wharfage under the statute, the facts clearly show that she did not actually go into winter quarters until after she had discharged her cargo on January 10th. Until then she awaited her turn for unloading, with the rest of the fleet, and as a carrier her employment did not cease until then. If a ship is engaged in the maritime business while unloading, *a fortiori* she is so engaged while waiting to unload. See *Leathers* v. *Blessing,* 105 U. S. 626; *The Main,* 51 Fed. 954, 957 (2 C. C. A. 569). In the case of *The Murphy Tugs* (D. C.), 28 Fed. 429, 432, in which a statutory lien for wharfage was refused, the vessel had laid up for the winter, and the decision is therefore not in point, in view of our conclusion that the Millinokett had not yet laid up. In *The Pulaski* (D. C.), 33 Fed. 383, while it was said that the contract would be adjudged to be a maritime if the storage were a mere incident of transportation (as it was here), the ship was adjudged to be not engaged in navigation because "the contract is primarily for storage, and the transportation is a mere contingency, possible or probable, in the future."

In *The Richard Winslow* (D. C.), 67 Fed. 259, the

bill of lading provided for free storage in the vessel until April 1st, at the shipper's option, and the vessel was moored at the wharf at the shipper's direction, where she remained during the winter in charge of a shipkeeper. The court found that the vessel had been "converted into a mere winter storehouse for the corn," but the general rule was stated to be that the liability of carriers, as such, "terminates with the service of transportation, after a reasonable time and opportunity for the consignee to accept and remove them." What is a reasonable time may be open to doubt, but it is not charged here, nor do we think, that in view of the number of vessels waiting to unload, the Millinokett was converted into a warehouse by the elapsing of 37 days from the time she dropped anchor until she was unloaded.

We are satisfied that this is an action *in rem* to enforce a lien against a vessel engaged at the time in maritime service, and may be brought only in the admiralty courts of the United States. Where the lien sought to be enforced is one against a vessel engaged in nonmaritime service, the State court has assumed jurisdiction, under this statute, of proceedings *in rem* to enforce it. See *City of Erie* v. *Canfield*, 27 Mich. 479; *People's Ice Co.* v. *Steamer Excelsior*, 43 Mich. 336 (5 N. W. 398); *McCarthy* v. *Circuit Judge*, 118 Mich. 363 (76 N. W. 756); *Delaney Forge & Iron Co.* v. *The Winnebago*, 142 Mich. 84, 93 (105 N. W. 527, 113 Am. St. Rep. 566).

The judgment of the lower court dismissing the complaint filed by the complainant is hereby affirmed, with costs to the defendant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.