## SMITH v. LAMPE.

### No. 6208.

Circuit Court of Appeals, Sixth Circuit.

March 14, 1933.

George W. Cottrell, of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and George C. Mulvihill, all of Cleveland, Ohio, and G. A. Resek, of Lorain, Ohio, on the brief), for appellant.

Dorr E. Warner, of Cleveland, Ohio, for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The suit below was in admiralty by libel in personam; the libelant seeking damages for the stranding of the barge, State of Ohio, on the shore of Lake Erie near Lorain, Ohio, and claiming that negligent signaling by the respondent with the horn of his automobile during a fog caused its loss. From an interlocutory decree in favor of libelant, the respondent appeals.

The appellee, Lampe, the libelant below, was the owner of the wrecked barge and of the tug Peerless, engaged in taking sand from Lake Erie and delivering it at dock in Lorain. On December 18, 1929, during a thick fog, and after government fog signals had been discontinued for the winter, the vessels were out on the pumping ground, a distance of about nine miles from Lorain, the barge in tow of the tug. An arrangement had been made between Lampe and the captain of the tug that if the fog continued Lampe would go out to the breakwater and "blow them in." The vessels left the pumping ground

about 1:15 in the afternoon, took their usual course to Lorain, and when within about fifteen minutes of the time required to make the run to the harbor checked down and blew fog signals, three blasts, and listened for an answer. Not hearing answering signals, the vessels cruised down the lake on a line parallel with the shore, and then back again, continuing their signals for some time. Smith, the appellant, and responded below, lived on Lakeside avenue, close to the shore of the lake. On the afternoon in question, at about three o'clock, he heard signals of boats out in the lake. Upon going to the shore he could hear the noise of engines, but didn't know what boats they were. The noise becoming louder, indicating to him a nearer approach to the shore, he returned to his home, contrived a megaphone, and called to the boats. For a time it seemed to him that they drew away from the shore. He thereupon returned for his automobile, and came to the foot of Colorado avenue, for the purpose of locating the boats so as to inform the Coast Guard commander where they were. Again hearing the noise of engines, he blew warning signals with his automobile horn. When satisfied that the boats were again pulling away from the shore, Smith left his post to inform the commander of the Coast Guard that there were two boats on the lake trying to make the harbor. It was then for the first time that he learned whose boats they were. The commander of the Coast Guard left the life saving station in his boat at 4 o'clock, and Smith returned to the foot of Colorado avenue. The captain of the tug, hearing signals from the shore, and believing that they came from a launch at the entrance to the harbor, headed in the direction of the signals, blowing fog signals himself, and believing he was receiving fog signals in reply. Meanwhile soundings were being taken until the tug was in about twenty-one feet of water. The soundings indicating that the boats were not making the harbor entrance, the tug was turned back on the opposite course. It came round without any mishap, but the barge came only half way round when it struck a rocky bottom. A hole was cut in her, she filled with water and sank, resulting in total loss of the vessel and her cargo.

It is the claim of the libelant that Smith negligently interfered with the navigation of the boats, that his negligence lured the barge to its destruction, and that such negligence was the proximate cause of the loss.

■ We are met at the outset with a jurisdictional question. Smith and Lampe both being citizens and residents of Ohio, there is only one ground upon which jurisdiction may be retained, and that is if the suit is properly brought in admiralty. It is the contention of the respondent that, if any tort was committed, it was committed on land, and an action to recover consequential damages is one within the common law, rather than the admiralty jurisdiction. With this contention we cannot agree. It was held by this court, Dorrington v. City of Detroit, 223 F. 232, 242, that where the negligent act originates on land and the damage occurs on water, the cause of action is within the admiralty jurisdiction. One of the cases relied upon was Milwaukee v. The Curtis, 37 F. 705, 3 L. R. A. 711 (D. C.), where it was made clear that the locality of the thing to be considered is that of the thing injured, and not of the agent causing the injury, and that when the injury is to a vessel afloat, even though the negligence originated on land, the tort is maritime, and within the admiralty jurisdiction. See, also, Leonard v. Decker, 22 F. 741 (D. C.); Daly v. New Haven, 69 Conn. 644, 38 A. 397. The converse is also true, that is, where the act originates on water and the damage occurs on land, the cause of action must be tried at law. The Plymouth, 3 Wall. 20, 18 L. Ed. 125; Milwaukee v. The Curtis, supra. We conclude that the court below was right in assuming and retaining jurisdiction.

In defense of the case on its merits, the respondent urges that he was guilty of no negligence, that his negligence, if any, was not the proximate cause of the injury because he could not reasonably foresee that his signaling, intended as a warning to keep off, would be interpreted as a sign to come on, and that the chain of causation was broken by the libelant's own negligence, which was the sole proximate cause of the loss.

■ We need only consider the second of these defenses. It has long been settled that in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, injury at least in some form ought to have been foreseen in the light of the attending circumstances. Milwaukee, etc., Railway Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Northern Railway Co. v. Page, 274 U. S. 65, 47 S. Ct. 491, 71 L. Ed. 929; Davis v. Schroeder, 291 F. 47 (C. C. A. 8); Winters v. B. & O. Railroad Co., 177 F. 44 (C. C. A. 6); Orton v. Pennsylvania Railroad Co., 7 F.(2d) 36 (C. C. A. 6); Bobango v. Erie Railroad Co., 57 F.(2d) 667 (C. C. A. 6); Palsgraf v. L. I. Railroad Co., 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253 (Cardozo, C. J.). See, also,

Johnson v. Kosmos Portland Cement Co. (C. C. A.) 64 F.(2d) 193, decided at this session.

The alleged negligent acts of the respondent were not wanton. Not only was there no finding by the court below that they were, but the oral opinion of the District Judge expressly absolved the respondent of malice or any intention to commit a wrong toward the libelant. Under all the circumstances, we fail to see how any injurious result could have been reasonably anticipated by the respondent as a consequence of his well-intentioned signaling, either the particular injury which did result or any other. He did not know of the arrangement which had been made by Lampe with the captain of the tug. The record does not show that he knew what boats were out on the lake, the meaning of fog signals, nor the proper answer to be made thereto. The mere fact that Smith lived in Lorain near the shores of the lake does not, without more, justify an inference that he was familiar with such signals. He was not a mariner; nor had he any duties on shore connected with navigation. It is clear from the record that the purpose of his signaling was to inform the boats they were approaching the shore, and to warn them off. He had no means of knowing that the blowing of his automobile horn would be interpreted as signals from a launch at the harbor entrance for the boats to approach the shore. We are of the opinion that there was no substantial evidence to sustain the finding below that the acts of the respondent were the legal and proximate cause of the loss suffered by the libelant.

There is a respectable and growing body of authority for the rule that reasonable anticipation of injury is important only in determining negligence, while the natural course of events is the test of required causation. Hill v. Winsor, 118 Mass. 251; Christianson v. Chicago, St. P., M. & O. Ry., 67 Minn. 96, 69 N. W. 640; Hoepper v. Southern Hotel Co., 142 Mo. 389, 44 S. W. 257; Jeremiah Smith "Legal Cause in Actions of Tort," 25 Harvard Law Rev. 237 et seq. See, also, Johnson v. Kosmos, supra, and Pittsburgh S. S. Co. v. Palo (C. C. A.) 64 F.(2d) 198, decided at this session. Applying this rule, the record contains no substantial evidence of negligence. If the facts be considered from the standpoint of negligence rather than causation, there is still nothing in the record to charge appellant with knowledge that what he did might, within reasonable probability, produce injury.

The decree below is reversed.