## HOLDER v. ST. LOUIS–SAN FRANCISCO RY. CO.
### No. 10727.

United States Court of Appeals
Sixth Circuit.
Jan. 24, 1949.

James L. Hutter, Jr., of Memphis, Tenn. (R. Garland Draper, of Memphis, Tenn., on the brief; David C. Doten, A. D. Bearman and James L. Hutter, Jr., all of Memphis, Tenn., of counsel), for appellant.

Cooper Turner, Jr., and Canada, Russell & Turner, all of Memphis, Tenn., for appellee.

Before SIMONS, MARTIN and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant is the administrator of the estate of his daughter who was killed while riding as a guest in an automobile when the car was on a bridge over the tracks of the appellee railroad in Shelby County, Ten-

nessee. The car struck the railing of the bridge approach causing one of its timbers to crash through the windshield of the car, striking the girl's chest, and causing her death on the following day. From a judgment of dismissal on the pleadings and statement of counsel, the administrator brings the appeal.

■ No evidence having been taken we must, under familiar rules, regard all of the allegations in the complaint as though they had been established by proof. The accident occurred at 11:30 on the night of April 5, 1947, while the car in which the decedent was riding was traversing the southerly approach to the bridge. While in the briefs the structure is designated as a bridge, it is more accurately an over-pass or viaduct over the Yale Railroad Yards of the appellee near the City of Memphis, and is an extension of Airways Boulevard, a modern highway 60 feet in width, built to connect the City of Memphis with its Municipal Airport. The over-pass is 21 feet wide, but its eastern edge is in line with the eastern edge of the highway. It was built about 1912, pursuant to a contract between the appellee's predecessors and Shelby County, by the terms of which the railroad was granted the right to build, operate and maintain a viaduct, the railroad agreeing that it would always properly maintain the structure and approaches in their entirety, and would construct substantial four-foot railings on either side. The County found that the approaches to the viaduct were built and gravelled according to specifications, and pursuant to a subsequent contract of similar import the viaduct was later extended.

In his original and amended complaint the appellant alleged it to be the duty of the railroad to maintain the approaches of the viaduct in a safe and secure manner; to maintain warnings and signs giving notice of its narrowness; to have safe and protective railings on its approaches and to rebuild, reconstruct and modernize it so as to meet the transportation needs of the public; to have a line or marker on the driving surface dividing the travel lanes on the viaduct and its approaches, and to properly light the approaches. The appellant charges violation of this duty in that there were no lights or markings; that the surface of the road bed leading up to and on to the viaduct had become rough, uneven and full of holes; that the railings on the southern approach were rotted, decayed, inadequate and constructed of such inferior and light lumber as to afford no protection for approaching automobiles; that trash had been allowed to accumulate along the sides of the viaduct, reducing its effective driving surface and the effective height of the guards. These failures of duty are asserted to constitute negligence, proximately causing the accident, when the car entering the approach at moderate speed collided with the railings.

The appellee moved for summary judgment on the pleadings. The court, in granting the motion and dismissing the suit, held that under no theory did the railroad owe the deceased any duty with respect to the viaduct or its approaches, on the ground that the bridge, when constructed, became part of the general Shelby County road system, and that the erection, placing and maintaining of signs, center stripes, or other forms of traffic control, if necessary, was the duty of the County and not the railroad; that the contract between the County and the railroad may not be looked to as a basis of liability because there was no privity as between the railroad and the decedent. It is, however, alleged in a supplemental complaint, and we must receive this allegation as though it were proved, that since the construction of the over-pass the railroad has constantly assumed the duty of maintaining the bridge and its approaches, has exercised exclusive control and maintenance, has from time to time made repairs, including the making of repairs after the accident here involved.

The appellant's multiple contentions are varied and the defense is equally so. It is urged that § 2643(a) of the Code of 1932 imposes a statutory duty on the railroad to maintain the structure and approaches in a safe condition; that the contract between the County and the defendant was made for the benefit of the general public, and that the third-party beneficiary rule is recog-

nized in Tennessee; that regardless of statute or contract there was a common law duty upon the appellee to safeguard the approaches to the bridge, and, finally, that the maintenance and repair of the bridge were ministerial acts and so could be delegated by the County to private persons. The appellee's response is that the County may not delegate its powers involving the exercise of judgment and discretion, and the contract with the railroad undertook to do so; that in its contractual obligation with the County the railroad was acting merely as agent of the County and so drew to itself immunity to suit without the consent of the sovereign. Finally, the railroad urges that if it be thought liable for fault on any theory it could not be held liable for nonfeasance but only for misfeasance.

■ Whatever may be the rule in Tennessee as to the power of the County to delegate to private persons or corporations the duty of maintaining any part of a public highway, we express no view thereon for while the rule may be important in a controversy between the contracting parties, it is of no importance here. Nor are we concerned with the question whether there was or was not privity of contract between the railroad and the decedent, although there is respectable authority for the application of the third-party beneficiary rule. We also find it unnecessary to determine the limited coverage of § 2643, or to draw nice distinctions between misfeasance and nonfeasance. The fact remains, if the allegations of the complaints and amended complaints are proved, that the railroad took it upon itself not only to construct but to maintain and care for the bridge. In doing so it necessarily assumed a duty to the traveling public, whether as an obligee under the contract or as a mere volunteer, to keep the bridge and its approaches in a reasonably safe condition so as to avoid injury to those invited to travel the over-pass. The classical test to be applied in the determination of negligence or its causal relation to injury, depends on whether, under all of the circumstances, there is reasonable expectation of injurious consequences flowing from wrongful acts or omissions. This test was applied in an early day in Milwaukee & St. P. R. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256, and has been fully discussed by us in a series of cases including Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193; Pittsburgh S. S. Co. v. Palo, 6 Cir., 64 F.2d 198; and Smith v. Lampe, 6 Cir., 64 F.2d 201, and in the American Law Institute Restatement of Torts, § 310. Reasonable expectation of injury may be sufficient to establish both negligence and its causal relation to accident, even though no injuries have previously been sustained, Johnson v. Kosmos Portland Cement Co., supra. Here it is alleged and not denied that many accidents have happened on the structure here involved prior to the one in issue. We are not advised that Tennessee law applies a contrary principle for assaying negligence.

■ There being no specific statutory duty upon the railroad, so far as we are able to learn, in respect to lights, warnings, roadway dividing lines, strength of railings, and so on, violation of which would constitute negligence per se, we are not called upon to catalog the precautions the railroad should have taken. The allegations of the complaint depict a situation inherently dangerous to automobiles while at night traveling a 60 foot superhighway and approaching a 21 foot over-pass. It will be for the jury to say whether the railings were unsafe and whether or not, without some warning of dangerous conditions by those who had undertaken the care and maintenance of the structure, there was negligence having a causal relation to the injury.

The cause will have to be remanded for trial. It may be that upon the taking of proofs an issue will emerge in respect to the contributory or sole negligence of the driver of the automobile or his guest passenger. If it does, and we think it a possibility, in view of the continuing easterly line of the highway over the over-pass, it will be submitted to the jury with appropriate instructions upon the applicable law of Tennessee.

Judgment reversed and the cause remanded for trial consistent herewith.