237 F.2d 294
 KIMBERLY CORPORATION, a corporation, Appellant,
v.
HARTLEY PEN COMPANY, a corporation, Lindy Pen Co., Inc., a corporation, and Sidney Linden, individually and doing business as Adams-Linden Co., Appellees.
 No. 14701.
 United States Court of Appeals Ninth Circuit.
 September 10, 1956.
 
 Flam & Flam, John Flam, Eugene H. Marcus, Los Angeles, Cal., for appellant.
 Harris, Kiech, Foster & Harris, Ford Harris, Jr., Donald C. Russell, Los Angeles, Cal., for appellees.
 Before DENMAN, Chief Judge, BONE, Circuit Judge, and TOLIN, District Judge.
 BONE, Circuit Judge.
 
 
 1
 This suit was originally instituted in 1953 by appellee-plaintiff, Hartley Pen Company, (hereafter called Hartley). In this action defendant-appellee, Lindy Pen Company, (hereafter called Lindy) was charged with infringement of Letters Patent No. 2,498,009 owned by Hartley.[1]
 
 
 2
 Later, and on or about January 15, 1954, appellant Kimberly Corporation, (hereafter called Kimberly) filed a motion to intervene as a plaintiff in the pending Hartley action upon the ground that it was the full equitable owner of the patent in suit, and as such, had an interest in the Hartley patent infringement suit. Leave to intervene was granted. So far as pertinent to this appeal, the Kimberly complaint in intervention prayed for a judgment ordering that Hartley execute an effective assignment of said patent to Kimberly, for an injunction, an accounting and other appropriate relief. In this first complaint Kimberly charged generally that Hartley, Lindy, one Linden, and two individuals, Sears and Schrader had infringed the said Letters Patent; that title thereto was being held by Hartley, Sears and Schrader as beneficiaries of their fraudulent acts hence these parties were holding such title as constructive trustees for the benefit of Kimberly. The complaint in intervention is thus squarely grounded upon a charge of fraud. Sears and Schrader were joined as defendants in this first complaint in intervention.
 
 
 3
 Hartley and the two individuals (Sears and Schrader) moved to dismiss the first Kimberly complaint in intervention on various grounds. In their motion Sears and Schrader had sought dismissal upon the ground that the court lacked jurisdiction of the subject matter of the infringement claims asserted against them; Hartley advanced the same claim as to itself and further challenged Kimberly's claim of title to the patent in suit on the ground that Kimberly's complaint failed to state a claim upon which relief could be granted. Among the various grounds for dismissal, Hartley also included the defense that Kimberly's claim to title of the patent in suit was barred because not commenced within either the two-year or three-year periods of the California Code of Civil Procedure.
 
 
 4
 In response to these motions the court entered judgment dismissing the complaint on the merits, with leave to Kimberly to serve and file an amended pleading.[2] Thereupon, the so-called first amended complaint (here involved) was served and filed by Kimberly in which revamped complaint the appellees named in the caption of this case on appeal were named as counterdefendants. This complaint tendered the issues now before us. (Sears and Schrader were not joined therein as defendants.)
 
 
 5
 In his first amended complaint (which is also grounded upon a charge of fraud) Kimberly asserted, inter alia, that the patent in suit was valid; that Hartley had knowledge of prior and paramount rights of Kimberly at the time of the assignment of the patent in suit to it by Sears and Schrader on November 7, 1949 (see footnote 1); that Hartley holds a bare legal title to the said patent as constructive trustee for the benefit of Kimberly; that without authority Lindy and Linden infringed the patent by constructing and using machines such as disclosed and claimed in the patent, and by using the methods taught in the patent and covered by its claims, and by selling ball-point pens so made; that Hartley had licensed others to manufacture and use machines and methods as disclosed in the patent in suit.
 
 
 6
 Other averments were that Sears and Schrader became full-time employees of Kimberly in September 1945; that "under the conditions" of their employment they were "obligated" to assign to Kimberly all patent rights in any improvement they might make in ball-point pens, and Sears was (also) obligated "under the terms if his employment" to investigate the possibility of obtaining patent protection for anything that was conceived or developed for Kimberly, and to confer with Kimberly's patent attorney for the purpose of taking steps to obtain such patent protection; and while so employed and in the course of their duties, Schrader and Sears jointly invented and developed the apparatus and method patent in suit which were first commercially used by Kimberly in the early part of 1947, and so used (apparently as a shop right) ever since that time; that before leaving the employ of Kimberly, Sears assured the vice-president of Kimberly that all necessary steps had been taken for such purpose, which "assurance" was false and fraudulent and made with intent to deceive; that Sears also fraudulently represented to said vice-president that the device or devices they had made did not include any patentable features, and Kimberly relied on such representations and made no further inquiry regarding patenting of the Sears-Schrader machine and method until advised of the pendency of the Hartley suit against Lindy for infringement.
 
 
 7
 Kimberly further averred, inter alia, that at no time did either Sears or Schrader ever inform it of their intention to obtain patent protection on the invention here involved, or of the filing of their application for a patent thereon, or the issuance of the patent; that all of these matters were concealed from Kimberly with intent to defraud it, and Kimberly did not learn of the issuance of Letters Patent here involved until the early part of December 1953 when it was notified by Linden, one of the defendants in the Hartley suit for infringement; that Sears and Schrader joined with three others as the original incorporators of Hartley, and that Sears and Schrader were actively in charge of the business affairs of Hartley at least until December 1949; that these men held title to the application, and Hartley now holds title to the said patent, all of them at all said times holding such title as constructive trustees for the benefit of Kimberly.
 
 
 8
 The formal prayer for relief conformed to the scope of these claims and was also broad enough to include the relief customarily demanded in infringement actions.
 
 
 9
 Upon the filing of this amended complaint, Hartley moved for summary judgment of dismissal upon the grounds that Kimberly's asserted claim to title of the patent in suit was barred by the statutes of limitation of the State of California, noted supra, and by laches of Kimberly. This motion was denied. Hartley thereafter filed an answer denying the material allegations of the complaint and setting up, inter alia, as affirmative defenses, the same contentions advanced in its motion for summary judgment, along with the further defense that Kimberly was estopped to assert a claim of title to the patent in suit.
 
 
 10
 In this posture a separate trial[3] was ordered pursuant to Rule 42(b), R.Civ. P. 28 U.S.C.A. on the issues raised by these affirmative defenses. Following trial the court entered an order reciting that all claims to equitable relief asserted by Kimberly were barred by laches, and that findings, conclusions and judgment be entered which dismissed the Kimberly complaint on the merits on the ground that all claims to equitable relief asserted therein were so barred. Subsequently the court made and entered such formal Findings, Conclusions and Judgment. The judgment dismissed the said Kimberly complaint with prejudice and without leave to amend. This appeal followed.
 
 
 11
 The lower court found from the evidence that Kimberly had both actual and constructive notice of facts which should have caused it to assert its equitable claim of title at an earlier time. On this vital question of fact Judge Mathes made comprehensive findings all of which were adverse to the material claims of Kimberly. The length of the transcript on appeal and the many trial exhibits now before us make it impracticable to burden this opinion with a recital of the text of the many findings and the many facets of the evidence and we confine ourselves to a discussion of the later noted carefully narrowed issues tendered by appellant Kimberly.
 
 
 12
 From the record it appears that Sears and Schrader (joint inventors of the patent here involved) had, during a period found by the court, been employees of Kimberly.[4] They gave testimony in the case. As we have noted above, the substance of Kimberly's claim is that it derived "rights" through employment agreements with Sears and Schrader which rights matured into full equitable ownership of the patent in suit which Hartley now claims to own by virtue of a fraudulent assignment from Sears and Schrader.
 
 Issues on Appeal
 
 13
 Counsel have eliminated irrelevant phases of controversy by carefully narrowing and defining in their briefs the precise questions for decision by this court.[5] In summary, they boil down to whether, under the facts of this case, the assertion of Kimberly's claim to equitable ownership of the patent in suit was barred by laches.
 
 
 14
 In its opening brief Kimberly presents these questions as follows:
 
 
 15
 "(a) Did intervener-appellant have such timely constructive or actual notice of facts relating to the alleged fraud as to form a basis for the defense of laches interposed by plaintiff-appellee?
 
 
 16
 "(b) Was there any showing on the part of plaintiff-appellee of prejudice or damage to it as a result of the purported delay in the assertion by intervener-appellant of its said claim?
 
 
 17
 "(c) Whether or not upon a consideration of the entire evidence in this case a mistake has been committed, and whether or not the Findings in this case and the Judgment based thereon are clearly erroneous."
 
 
 18
 The answering brief of Hartley asserts that "the only issue involved in this appeal is whether appellant's claim to title to the patent in suit is barred by the statutes of limitation of the State of California and by its own gross laches"; that "there are many other issues in this action which are in nowise involved in this appeal. For example, whether appellant actually has any interest in or right to the patent in suit was not considered by the District Court and is not an issue here. Similarly, the questions of validity and infringement of the patent in suit have not been considered by the District Court and are not before this Court."
 
 
 19
 In its reply brief, Kimberly responds to Hartley's version by asserting that Hartley "fails to recognize that the only issue in this case is whether intervener-appellant's claim is barred by laches * * * the Statutes of Limitations are applicable in equity cases only by analogy and are not necessarily determinative of the issue of laches." (Emphasis supplied in these quotations.)
 
 
 20
 Against these carefully delineated issues, the parties present arguments we briefly summarize.
 
 
 21
 Hartley asserts: (1) The Kimberly claim was dismissed on the ground of laches, but Sections 338(4) and 339(1) of the California Code of Civil Procedure are equally applicable to bar assertion of the claim; (2) Kimberly's claim for relief arises under California law and not under Federal law and the state statutes of limitation (above cited) are applicable and should be applied; (3) Kimberly does not assert or show any abuse of discretion in the court's holding of laches, and has not sustained its burden of proof on this appeal; its claim for relief was made and repudiated in June, 1947, and its delay of over six years thereafter bars this action; Kimberly had actual notice of the patent in suit prior to the middle of 1950, and its failure to assert any claim thereto until January 15, 1954 (complaint was dated January 14, 1954) is barred by laches and the appropriate statutes of limitation;[6] Kimberly's claim for relief is barred by its construc- tive notice of the facts regarding such claim as early as June 1947, and its delay thereafter in further asserting its claim; there is no actual fraud involved in this action; the record and law amply support the court's holding that Kimberly was guilty of laches; and finally, that Kimberly's attack on Miketta is wholly unwarranted, as he represented Kimberly with regard to the subject matter of this action at the time Kimberly made its original claim to ownership and when such claim was repudiated by Sears and Schrader.
 
 
 22
 Kimberly asserts (1) that it had neither actual nor constructive notice of the alleged fraud perpetrated by Sears and Schrader until early December of 1953; (2) Miketta, its patent counsel, was as a matter of law not a conduit for constructive notice of any of the crucial facts which would have disclosed the fraud back in May and June of 1947, and thereafter, for the reason that Miketta was at all of said times representing both Kimberly, and Sears and Schrader, this in an area in which there was a definite conflict of interest; (3) Miketta admitted that he did not inform Kimberly of this dual representation, and that once having undertaken to represent Sears on the "swedging machine patent," he could not reveal any of Sears' business to Kimberly; (4) the record is clear that Sears was chief engineer in charge of the designing and production of the very machines which produced Kimberly's products; that he knew and was in many instances the source of crucially confidential information vital to the business of Kimberly; that of necessity Kimberly was compelled to and did repose complete trust and confidence in him; (5) that under the circumstances and in view of the confidential relationship there was no duty on Kimberly's part to search the public records for the purpose of anticipating a fraud perpetrated by Sears; testimony relating to the purported conversations and other direct communications between Miketta and Croan on the one hand, and representatives of Kimberly on the other, alleged by Hartley to establish the fact that Kimberly had actual notice of the fraud or facts from which it could have discovered it, is refuted by documentary evidence and is also confused, uncertain and in parts so inherently incredible as to be without probative value.
 
 
 23
 Kimberly also avers that Hartley neither alleged nor proved that it was prejudiced in any way by the time lapse between its acquisition of the patent application and assertion of Kimberly's claim; that this court is in as good position as the trial court to appraise the evidence[7] which will reveal that a mistake has been committed by the trial court.
 
 Specification of Errors
 
 24
 Appellant specifies eight errors upon which it relies for reversal. It avers generally (1) that Miketta, as patent attorney, and unknown to Kimberly, represented adverse interests between Sears and Schrader, on the one hand, and Kimberly on the other hand, hence he could not be deemed to be a source of constructive notice to Kimberly "of the alleged fraud," an all-important matter overshadowing the litigation; that the court erred in finding that Miketta's knowledge of facts involved was notice to his client Kimberly; (2) that it was error to impute constructive notice to Kimberly of the issuance of the patent in suit by virtue of the asserted conversation in 1950 between Sears and one Croan,[8] an employee of Kimberly, this because it was not shown that Croan was a "representative" or agent of Kimberly; (3) that constructive notice of the pendency of the application for the patent because of the recording of the assignment thereof on November 12, 1949 could not be imputed to Kimberly because it was under no duty to search the public records; (4) that it was error in imputing constructive notice to Kimberly of the issuance of the patent on February 21, 1950, because no duty rested upon Kimberly to search the public records; (5) that the finding to the effect that the executive vice-president knew of its issuance in 1950 was based upon "the equivocal, unsatisfactory, and incredible" testimony of Croan and is clearly erroneous; (6) that the finding that Kimberly had actual knowledge in May 1947 of the refusal of Sears and Schrader to make a general assignment of their inventions is clearly erroneous because the testimony of Miketta on this matter is so "equivocal, confused and unsatisfactory" as to constitute the record virtually without support for such a finding; (7) that it was error to find that Kimberly was negligent or lacking in prudence in failing to make investigations regarding the perpetration of fraud by Sears and Schrader who were in a position of trust and confidence. In this specification appellant argues that "under the circumstances" it was excused from making such an investigation on this subject, but the court made no finding (as requested) on the matter of trust and confidence; (8) that it was error to fail to recognize that a mere lapse of time between May 1947 and January 1954 alone is not sufficient to sustain the defense of laches, and the court also erred in failing to find that Hartley did not sustain its burden of proof of prejudice and injury occasioned by the delay.
 
 
 25
 Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A. prohibits us from disturbing the findings made by the trial court unless they are clearly erroneous. From the whole record we cannot conclude that the elaborate findings are clearly erroneous or that the record demonstrates that a mistake has been made which calls for reversal. In our judgment they adequately and correctly dispose of the controverted and controlling issues of fact. They were made and entered by a competent and experienced trial judge who had before him a body of documentary records against which he could and did weigh and interpret the explanatory testimony of witnesses relative thereto and judge of the truth or lack of truth in their respective oral and written stories. His was the task of determining their credibility, for they presented a complete picture of the relationship existing between Kimberly and its employees Sears and Schrader, during the critical period or periods here involved. It is from what these key men did and said during such period that Kimberly derives its claim to equitable ownership of the Sears-Schrader patent. They were the direct and active participants who shaped the course of activities from which the presence or absence of fraud on Kimberly had to be demonstrated. These witnesses were questioned by counsel for the parties concerning matters referred to in documents on file, and their statements in affidavits on file in the case records, the affidavits being stipulated as their "first testimony."
 
 
 26
 The record bespeaks the fact that the opposing parties were in sharp conflict on all vital fact issues, and the simple and controlling fact issue before the court boiled down to whether Kimberly had actual or constructive notice several years before it instituted its action in intervention that Sears and Schrader repudiated and denied any and all claims of Kimberly to any patent they had developed during the time they were in its employ. In this posture, the trial court faced the necessity of weighing and evaluating a mixed body of evidence and testimony wherein oral testimony was directly tied to and explanatory of the various documentary exhibits used as the background of such testimony. See footnote 7. From this evidence the court had to determine and conclude whether or not Kimberly knew what had happened and thereafter slept on its rights and failed to bring a timely action to assert an equitable right to the Sears-Schrader patent and thus avoid the here asserted bar of laches advanced by Hartley as a defense.
 
 
 27
 Kimberly complains of lack of showing (paragraph (b) of Kimberly's questions on appeal, supra) that no prejudice or damage due to such delay was shown by appellee.
 
 
 28
 We think that damage and/or prejudice to appellee resulting from the long and unnecessary delay of Kimberly in asserting a claim to equitable ownership of the patent in suit becomes fully apparent from the facts developed at trial. These facts reveal a chain of significant incidents and events which in themselves were sufficient to put Kimberly on notice that any claim it had to ownership of the Sears-Schrader invention was being challenged, denied and repudiated by Sears and Schrader at the times and under the circumstances referred to in the later noted findings of the court.
 
 
 29
 In light of these facts, the long delay of Kimberly in asserting its claim to equitable ownership of the Sears-Schrader patent in suit is sufficient in itself to establish that the assertion of such a claim worked to the damage and prejudice of appellee and fully justified the views of the lower court concerning the bar of laches.[9]
 
 The Findings
 
 30
 We here summarize certain of the critical findings in which the court recites that:
 
 
 31
 (a) On or about January 20, 1945 Sears entered into a written contract with Leo Mizis, now known as Leo Kimberly, by which contract Sears was employed for a period of five years to invent and develop fountain pens and component parts therefor, and Sears was specifically required to assign all related inventions and any future improvements to Mizis; that the rights of Mizis in this contract were assigned to Kimberly prior to September 1945, and
 
 
 32
 (b) In September 1945, Kimberly Corporation employed Sears and one Green by a written employment contract; that this contract expressly cancelled and terminated the January 20, 1945 contract; expressly employed Green to "develop and promote" experimental work in connection with ball-pointed pens, inks and, in effect, required him (Green) to assign to Kimberly all rights to any and all ink formulas developed by Green while so employed. This employment contract was silent as to the intended nature of Sears' duties for Kimberly and as to whether Sears was obligated to assign any invention to Kimberly. Kimberly's present claim to ownership of the Letters Patent here involved is not based upon any written contract, and
 
 
 33
 (c) Schrader was orally employed by Kimberly in September 1945 in the capacity of general foreman. There was no written contract of employment between Schrader and Kimberly, and
 
 
 34
 (d) The material matters covered by finding 13 are set out in our footnote 1, and
 
 
 35
 (e) The machine and method of the patent in suit were fully known to Kimberly at least as early as March 1947, and neither such machine nor method was at any time concealed from Kimberly by either Sears or Schrader. At all times during the employment of Sears and Schrader by Kimberly, and thereafter, Kimberly was represented by Miketta, its patent counsel; that although Kimberly, prior to May 1947 appreciated that such machine and method might be patentable, it at no time made any inquiry of Miketta or any other patent counsel as to the patentability of either; that an opinion from such counsel was available to Kimberly as it was to either Sears or Schrader, and Kimberly was not justified nor had it any right to rely upon any personal opinion of either Sears or Schrader with respect to such patentability if in fact inquiry was made of Sears and Schrader. As early as May 1947, Kimberly had a duty to make an independent investigation as to the possible patentability of such machine and method, and having the foregoing knowledge, was negligent in failing to make such investigation and cannot now complain, six years later, of an injury resulting to it from such negligence, and
 
 
 36
 (f) Early in June 1947, Miketta, acting as an agent for Kimberly and with its authorization, requested Sears to execute a written agreement to assign to Kimberly inventions made by Sears during the course of his employment by Kimberly and relating to ball-pointed pens and their manufacture. Early in June 1947, Schrader was requested to execute a generally similar agreement. These requested agreements required both men to so assign all inventions made by them during the course of their said employment "and embodied in apparatus or mechanical devices used by Kimberly Corporation prior to May 1, 1947, in the manufacture of ball pens or parts therefor," and at that time Kimberly knew that the machine of the patent in suit had been designed by Sears and Schrader and was a mechanical device which had been so used by Kimberly. Both Sears and Schrader refused to execute such agreements, and this fact was known to Kimberly prior to June 5, 1947. In particular, Sears so refused to execute any such agreement to assign on the stated ground that he was not obligated to do so under the terms of his employment, and this was known to Kimberly prior to June 5, 1947. Such refusals by Sears and Schrader constituted a repudiation by them in May or June 1947 of any obligation that they might have had to assign to Kimberly inventions made by them during their employment by it. In lieu of such written agreements to assign, Kimberly's attorney, acting on its behalf, prepared and submitted to Sears and Schrader documents entitled "Agreement," and requested that they execute same, which Sears and Schrader did on June 5, 1947. Such agreements in effect granted Kimberly a free right to use or shop right[10] from both men pertaining to apparatus, machines and methods of operation relating to ball-pointed pens used by Kimberly, and released Kimberly from all claims that Sears and Schrader might have had against Kimberly based on appartus and methods employed by Kimberly prior to May 1, 1947. These agreements were delivered to general counsel for Kimberly on or about June 11, 1947, and
 
 
 37
 (g) The court further found that prior to June 14, 1947, the shareholders of Kimberly Corporation were negotiating an Option Agreement with Eversharp, Inc. which was made by the parties thereto on June 14, 1947. Among others, certain of the parties thereto included Leo Mizis (same as Leo M. Kimberly, president of Intervener), Zyga Taube, (executive vice-president of Intervener) and Sears. The Option Agreement provided that the shareholders of Kimberly Corporation agree to assign to Kimberly Corporation all of their right in inventions, designs, improvements and methods relating to ball-point pens which were made or acquired by them "heretofore" or within a year after the effective date of the Option Agreement. Sears was expressly relieved from the covenant to assign with full knowledge of the intervener, such knowledge being possessed by the intervener more than six years prior to asserting its claim, and
 
 
 38
 (h) The refusals of Sears and Schrader to agree to assign to intervener inventions made by them during their employment, and the fact that at that time, at least as early as May or June, 1947, the intervener knew that Sears and Schrader had during their employment designed the machine and developed the method of the patent in suit, were circumstances sufficient to put a prudent man upon independent inquiry as to the patentability of such machine and method, and such circumstances amount to constructive notice to the intervener, at least as early as June 14, 1947, that such machine and method were patentable. By reason of the circumstances, the intervener had no right to rely upon any statements allegedly made by Sears or Schrader as to the patentability of such machine and method. Any possible claim that the intervener may have had to an assignment from Sears or Schrader, or both, as to inventions made by them during the term of their respective employment by the intervener, including the invention of Letters Patent No. 2,498,009 in suit, arose at least as early as June 14, 1947, and (i) By the written assignment by Sears and Schrader to the plaintiff, Hartley Pen Company, which was recorded in the United States Patent Office on November 12, 1949, and by the issuance of United States Letters Patent No. 2,498,009 in suit which on its face issued to the plaintiff, Hartley Pen Company, on February 21, 1950, the intervener was placed upon constructive notice of the assignment of such patent rights by Sears and Schrader to the plaintiff, Hartley Pen Company, and the issuance of said patent in suit as early as November 12, 1949, and again on February 21, 1950, more than four and three years, respectively, before assertion of its claim to title, and
 
 
 39
 (j) Prior to the middle of the year 1950 the intervener received direct and actual notice of the issuance and contents of United States Letters Patent No. 2,498,009, in suit, and
 
 
 40
 (k) Following its requests in May or June 1947 to Sears and Schrader to assign to it inventions made by them during their employment by it, the intervener took no action whatever to claim ownership of the inventions of United States Letters Patent No. 2,498,009 in suit until it filed its motion for leave to intervene in this action on January 15, 1954, and
 
 
 41
 (l) The delays of the intervener in asserting its present claim to ownership of United States Letters Patent No. 2,498,009 and the inventions thereof constitute gross laches such as to bar such claim, and
 
 
 42
 (m) The claim of the intervener to ownership of United States Letters Patent No. 2,498,009 in suit and the inventions thereof would be barred by applicable state statutes of limitations, Calif. Code Civ.Proc. § 338(4), if asserted in the courts of the State of California.
 
 Conclusions of Law
 
 43
 Based upon all of its findings the trial court entered Conclusions of Law setting forth generally that the court had jurisdiction of the parties and over the subject matter set forth in Kimberly's first amended complaint; that Hartley was the legal owner of the patent here involved; that Kimberly should be denied, and is denied, because of laches, any claim to title or equitable ownership, in whole or in part, in and to the patent in question and the inventions thereof; that any claim that Kimberly may have had to title or equitable ownership of the patent in suit "should be, and hereby is," barred by gross laches; that Hartley was entitled to a judgment against Kimberly dismissing its first amended complaint with prejudice, and without leave to amend; and that Hartley was entitled to recover from Kimberly, its costs and disbursements, with judgment to be entered accordingly.
 
 
 44
 The judgment was in accord with these conclusions.
 
 
 45
 Kimberly lays heavy emphasis on its claim that its attorney Miketta played a dual role of counsel for it and Sears at least as early as March 11, 1947, and that he represented Sears on a patent matter in the middle of May 1947. The substance of the claim is that while still its counsel Miketta concealed from appellant that he had (also) taken on the representation of Sears, hence he could not be a conduit through which the claimed fraud of Sears could, or would have been, communicated to Kimberly. A considerable body of evidence which dealt specifically with Miketta's activities and the nature of his relations with Sears, and with Kimberly and other employees during the here important periods, was introduced and a record which fully developed the pertinent facts was presented to the court. Despite the comprehensive nature of the findings appellant complains that they do not adequately dispose of its contentions concerning Miketta.
 
 
 46
 In its summary of arguments it urges us to appraise the evidence because our appraisal would disclose that "a mistake has been committed by the trial court" and that the evidence does not support the Findings and Judgment. We think the evidence supports the Findings and Judgment. The Judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The application for Letters Patent was filed June 27, 1947. The patent was issued to Hartley on February 21, 1950. The entire right, title and interest of the inventors Sears and Schrader was assigned to Hartley on November 7, 1949, and the assignment was recorded in the Patent Office on November 12, 1949. The invention covers a method and apparatus for assembling ball-pointed writing instruments
 The court found (Finding 13) that Sears and Schrader were the joint-inventors of the inventions here involved while they were employed by Kimberly and between September, 1945 and March 1, 1947; that the invention comprises a machine for assembling ball-pointed pens and a method of using the same; that such a machine was completed, in the possession of Kimberly, and in commercial use by Kimberly to practice such method prior to March, 1947; that if either Sears or Schrader was under any obligation to assign such specified inventions of the patent in suit to Kimberly, such obligation matured upon the completion of such inventions and not later than March 1947.
 And see our later summary of the findings.
 
 
 [2]
 For a detailed consideration of the issues then present in the case see the enlightening opinion of the lower court reported as of June 28, 1954 in D.C., 16 F.R.D. 141. It will be noted that there the lower court gave full consideration to the question whether it could entertain the Kimberly suit which was not a claim of which the court could take original jurisdiction. It held at pages 156, 157, that the claim was properly to be considered and dealt with as ancillary to the main cause, in that, as an asserted owner Kimberly was entitled to intervene as of right in a patent infringement suit. The parties are not here relying on any jurisdictional issue
 Pursuant to this opinion Kimberly's first complaint in intervention against Schrader and Sears for alleged infringement was dismissed. The court also discussed the defense of laches, and application of the California Statutes of Limitation to obligations not founded upon an instrument in writing or claims based upon fraud. Judge Mathes' reported opinion foreshadows the later proceedings in the separate trial of issues raised by Hartley's affirmative defenses the disposition of which led to the instant appeal.
 
 
 [3]
 In this separate trial on the affirmative defenses the parties stipulated that certain affidavits on file in the proceedings were to be accepted as the first testimony of the certain parties offering them
 
 
 [4]
 The court found that Sears and Schrader while employed by Kimberly between September, 1945 and March 1, 1947, made the invention here involved. The pleadings show that these men left the employ of Kimberly in May 1947
 
 
 [5]
 Lindy Pen Co., and Sidney Linden did not file briefs on this appeal
 
 
 [6]
 While the lower court found that Kimberly's action "would be barred by applicable state statutes of limitation, if asserted in the courts of the State of California," the court referred only to Section 338(4) of the California Code of Civil Procedure which reads as follows: "Within three years * * * an action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."
 Hartley argues that Section 339(1) of the Code is equally, if not more, apposite to the facts of this case. The pertinent language of the subsection so relied on reads as follows: "Within two years * * * An action upon a contract, obligation or liability not founded upon an instrument of writing * * *."
 The transcript of trial proceedings indicates that at the outset of the trial the court stated its understanding to be that Kimberly was "not relying upon a written contract but * * * upon anything else that would give Kimberly" the invention. Counsel for Kimberly agreed that this "understanding" correctly reflected its position. This being the case we agree with the argument in Hartley's brief that Kimberly's claim is based solely on the alleged implied-in-law obligation of Sears and Schrader to assign to Kimberly inventions made by them during their employment and arising out of such employment.
 
 
 [7]
 By stipulation certain affidavits (along with depositions and attached exhibits which were placed on file in the records of the case) were introduced at trial with the understanding that the averments in the affidavits were to be considered and deemed to be the "first testimony" of the makers. Also in evidence was certain correspondence relating to the issues in the case. Certain of the affiants were prominent actors in the affairs of Kimberly; they were called as trial witnesses to give, and did give, oral testimony. They were questioned by counsel concerning matters alleged in their affidavits, and in correspondence, and in this respect the sort of mixed record coming to us bears close resemblance to that presented in General Casualty Co. v. School District ex rel. Lyons, 9 Cir., 233 F.2d 526, where this court commented on the duty of an appellate court when called upon to appraise a trial record consisting in part of oral testimony and partly of documentary proof related to the testimony all of which (as here) reached to the heart of the vital and controlling fact issues
 An interesting discussion of the problem posed by a record made up of such mixed evidence is found in Koehler v. Ellison, 7 Cir., 226 F.2d 682, 686.
 
 
 [8]
 In an affidavit on file Croan set forth that he was continually employed between May 1947 and June 30, 1950 by Kimberly as technical director; that during his said employment and prior to June 30, 1950, he saw and examined a copy of the patent in suit then on the premises and in the executive offices of Kimberly; that he did not know who procured this copy of the patent nor the manner in which the copy appeared in the office of Kimberly; that the copy was openly available for inspection by Croan and the officers of Kimberly. In his later oral testimony at trial Croan stated that the patent, or a copy of the patent, was brought to him and shown to him in the offices of Kimberly by Mr. Taube, general manager of Kimberly. He was then closely examined as to the identity of the man who showed him the patent and the nature of his discussion with Mr. Taube. He was also questioned as to whether he quit his job voluntarily or was fired. At the time of trial Croan was employed by Hartley although he was not a stockholder in that company
 
 
 [9]
 The existence of laches is a question primarily addressed to the discretion of the trial court and need not be determined merely by a reference to a mechanical application of the statutes of limitation. Courts of equity, however, usually act or refuse to act in analogy to such statutes. See Gillons v. Shell Co., a patent case, 9 Cir., 86 F.2d 600, 607, 608, certiorari denied 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532; Craftint Mfg. Co. v. Baker, 9 Cir., 94 F.2d 369; Westfall Larson & Co. v. Allman-Hubble Tug Boat Co., an admiralty case, 9 Cir., 73 F.2d 200, 203
 In determining what delay constitutes laches, courts of equity are not bound by the statutes of limitation relating to actions at law of like character; but such courts "usually act or refuse to act in analogy" to such statutes. Gillons case, supra, and Westfall Larson case, supra, 73 F.2d at page 203, where defense of laches was involved in an admiralty case where equitable principles were applied.
 The rational reason for resorting to statutes of limitation by way of analogy also finds expression in the late case of Morales v. Moore-McCormack Lines, Inc., 5 Cir., 208 F.2d 218, 220, 221, where this procedure was applied and approved in an admiralty case. There the court emphasizes that persons claming excuse for delay must show that they exercised the diligence required of reasonably prudent persons; that where a libellant sued at common law, the statute of limitations would bar a recovery; that while courts of admiralty are not bound by common law limitations they may adopt them by analogy unless equitable reasons exist for not doing so.
 The findings and conclusions in the instant case indicate that the lower court went no further than a mere reference to California statutes and this purely by way of analogy, a factor which does not introduce a new and novel principle in the trial of an equity case, as is demonstrated in many cases. See Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, where court comments on application of rule of laches when equitable relief is sought in a federal court.
 
 
 [10]
 See our comments in Consolidated Vultee Aircraft Corp. v. Maurice A. Garbell, Inc., 9 Cir., 204 F.2d 946 on what rights inured to the benefit of Kimberly under this "shop right."