**GENERAL BEDDING CORPORATION,**
Plaintiff–Appellant,

v.

**Angel ECHEVARRIA, Angel Echevarria Co., Inc., d/b/a Somma Mattress, and Frederick Brandau, Defendants–Appellees.**

No. 90–55762.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1991.

Decided Oct. 28, 1991.

Charles L. House and Merrill R. Talpers, Olsen & Talpers, Kansas City, Mo., for plaintiff-appellant.

Gregory P. Stone and Kristin A. Linsley, Munger, Tolles & Olson, Los Angeles, Cal. for defendants-appellees.

Before FLETCHER and CANBY, Circuit Judges, and REED,* District Judge.

EDWARD C. REED, Jr., District Judge:

General Bedding Corporation appeals from a judgment of the United States District Court for the Central District of California granting summary judgment because the statute of limitations had run. We reverse because there is a genuine issue of material fact regarding constructive notice.

## FACTS AND PROCEEDINGS BELOW

From 1974 to 1978, General Bedding, a Missouri corporation, designed, manufactured, imported, and sold air mattresses. In January of 1978, General Bedding authorized Fred Brandau, Vice President, Sales Manager, and Director, to investigate the uses of polyvinyl tubes in waterbeds. Brandau worked with Angel Echevarria, whose company was supplying mattress covers to General Bedding. In March of 1978, Echevarria applied for a patent for a waterbed design using tubes. In April of 1978, Brandau and Echevarria, without informing General Bedding, entered into a written agreement wherein Brandau would get a one-half interest in the invention and the profits derived from it. In June of 1978, General Bedding ceased business activities.

In 1980, the United States Patent Office granted Echevarria's application, giving him patent number 4,221,013. The patent named Echevarria as the sole inventor.

In November of 1987, an officer of General Bedding was contacted by parties in litigation with Echevarria over his patent. General Bedding then filed this lawsuit on September 30, 1988, in the United States District Court for the District of Kansas, against Brandau, Echevarria, and Angel Echevarria Company. On June 30, 1989, the case was transferred to the Central District of California. On October 12, 1989, the plaintiff filed its Amended Complaint. Plaintiff's Amended Complaint alleged that Brandau's contract with General Bedding rendered any invention he made in the course of his employment the property of General Bedding. The complaint further alleged that while Brandau reported back to General Bedding that waterbeds with tubes were not commercially feasible, he secretly agreed with Echevarria that Echevarria should patent the design and they would split the profits. Plaintiff's claims include design misappropriation, conversion, Lanham Act violations, unfair competition, tortious interference with contract rights, conspiracy to breach fiduciary obligations, fraud, and tortious interference with prospective business advantage.

Defendants Angel Echevarria and Angel Echevarria Company moved for summary judgment in March of 1990, arguing that plaintiff's claims were barred by the statute of limitations. On May 14, 1990, the district court issued a Tentative Ruling granting defendants' motion, and on May 17, 1990, a final order was entered. Plaintiff then filed this appeal.

## DISCUSSION

### I. STANDARD OF REVIEW

■ Plaintiff appeals from the district court's order granting defendants' motion for summary judgment. An order granting a motion for summary judgment is reviewed de novo. *Carpenter v. Universal Star Shipping, S.A.,* 924 F.2d 1539, 1542 (9th Cir.1991). This court must determine, when viewing the evidence in the light most favorable to the non-moving party,

---

* Honorable Edward C. Reed, Jr., Chief United States District Judge for the District of Nevada, sitting by designation.

whether any genuine issue of material fact exists, and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

## II. STATUTE OF LIMITATIONS

The district court granted summary judgment because it held that all claims were barred by the statute of limitations. "At the very latest, the claims accrued, under Cal.Civ.Pro.Code § 338(4), in 1980 when Echevarria's patent issued." [District Court's Tentative Ruling].

■ California Code of Civil Procedure § 338(4) [1] provides a three year statute of limitations for fraud claims. However, "[t]he cause of action ... is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud...." Cal.Civ.Pro.Code § 338(4) (West 1982). Discovery, for purposes of § 338(4), is not limited to actual knowledge:

The rule is that the plaintiff must *plead and prove the facts* showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake. Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run.

3 B. Witkin, California Procedure § 454 (3d ed. 1985) (emphasis in original) (cited with approval in *Weir v. Snow,* 210 Cal.App.2d 283, 292, 26 Cal.Rptr. 868, 873 (1962)). Thus, plaintiff has discovered its claim under § 338(4), and the statute of limitations begins to run, when it has actual *or constructive* notice of its claims.[2]

■ In the present case, there is no evidence that plaintiff had actual knowledge of its claims before November of 1987, when it was contacted by the attorneys in litigation with Echevarria. Therefore, the only issue to be decided in this motion for summary judgment is whether General Bedding had constructive notice of its claims.

"Ordinarily we leave the question of whether a plaintiff knew or should have become aware of a fraud to the jury." *Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F.2d 271, 275 (9th Cir.1988). Summary judgment is appropriate only where a jury could not reasonably find for the plaintiff on this issue. *Id.* Where there are disputed questions of fact or facts susceptible to opposing inferences as to when the statute of limitations for fraud commenced, summary judgment is not appropriate. *Garter–Bare Co. v. Munsingwear Inc.,* 723 F.2d 707, 711 (9th Cir.1984), *cert. denied,* 469 U.S. 980, 105 S.Ct. 381, 83 L.Ed.2d 316 (1984).

In the present case, it is undisputed that Echevarria's patent application was granted in 1980. "[I]ssuance of a patent and recordation in the Patent Office constitute notice to the world of its existence." *Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.,* 297 U.S. 387, 393, 56 S.Ct. 528,

---

1. This section has been renumbered to § 338(d).

2. Theoretically, there is a distinction between federal claims, such as plaintiff's Lanham Act claim, which borrow state statutes of limitations, and state claims, which use state statutes of limitations. For federal claims, federal law determines when the state statute begins to run. *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1412 (9th Cir.1987). For state claims, state law governs. *Luksch v. Latham,* 675 F.Supp. 1198, 1204 (N.D.Cal.1987). However, the two standards are apparently identical, the period for each commencing when the plaintiff discovered or could have discovered the fraud with the

exercise of reasonable diligence. *SEC v. Seaboard Corp.,* 677 F.2d 1289, 1309 (9th Cir.1982) (federal rule on when period commences is "similar, if not identical" to California law). Both also hold the view that the determination is usually a question for the trier of fact. *Luksch,* 675 F.Supp. at 1204. There may be differences in the pleading requirements between California law and federal law, but they are not relevant to the actual standard at issue in this motion for summary judgment. *Rochelle v. Marine Midland Grace Trust Co.,* 535 F.2d 523 (9th Cir.1976).

529, 80 L.Ed. 736 (1936). Appellant does not dispute that the issuance of the patent in 1980 gave it constructive notice of that patent. Appellant contends, however, that knowledge of the patent does not constitute constructive notice of appellant's claims against the defendants.

Appellant argues that because Brandau's name was not on the patent, a reasonable person might not infer from the patent's existence that fraud had occurred. The patent could instead be the result of an independent discovery by Echevarria. We find this argument compelling, given appellant's allegation that Brandau was involved in the fraud. Brandau was apparently the only employee of General Bedding involved in the investigation of the application of tubes to waterbeds. Viewing the evidence in the light most favorable to appellant, only Brandau knew the details of his research and cooperation with Echevarria. In that case, only Brandau could have known if the patent was for the same design. Because only Brandau would have been alerted by the design, arguably only Brandau should have been alerted by this patent. What was most likely to alert the other employees of General Bedding—Brandau's name—was absent from the patent.

The patent may also have put General Bedding on constructive notice if it should have alerted General Bedding of the need to inquire further. "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Madariaga*, 851 F.2d at 275. Yet, for the reasons discussed above, it is not clear that a reasonable person would investigate merely because this patent was issued. Although the patent application was filed soon after Brandau worked with Echevarria, Brandau's name was not on it. It was not necessarily unusual for Echevarria to patent such a design. Many inventions and discoveries are made soon after

unsuccessful research. Thus, a reasonable person might not suspect fraud and investigate.

The fact that the evidence would also support an inference that General Bedding was on constructive notice, even if such an inference is stronger, is not a sufficient basis for granting summary judgment. As we have stated regarding the accrual of a cause of action under the securities laws and for common law fraud, "Even if the parties' alternative interpretations were doubtful, the question of what a reasonable investor would have done is not so certain as to allow a determination n as a matter of law." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1310 (9th Cir.1982).

In similar cases, courts have shown a willingness to leave resolution of these conflicting inferences to the jury. For example, in *Briskin v. Ernst & Ernst*, 589 F.2d 1363 (9th Cir.1978), we reversed summary judgment in a securities fraud case where there was a question as to constructive notice. We stated in *Briskin*, "A trial judge should not assign conclusive legal effect to such documents at the summary-judgment stage when there can be a genuine difference of opinion as to their impact on a reasonable person." *Briskin*, 589 F.2d at 1368. Similarly, we cannot conclude, as a matter of law, that a reasonable person would necessarily investigate when confronted with Echevarria's patent. Indeed, in *Briskin*, it was for the jury to decide whether a reasonable person would investigate further even after the discovery of oral misrepresentations: "It is possible that a reasonably prudent person would not suspect written representations to be false even after discovering the falsity of some oral representations." *Id.* at 1368–69. General Bedding was faced with far less evidence of wrongdoing than the investors in *Briskin*, who knew they had not been told the truth.[3]

However, some cases have decided the issue of constructive notice as a matter of

---

**3.** *See also Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499 (9th Cir.1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989) (notice that competitor had been sued for il-

legally "dumping" certain merchandise not constructive notice as matter of law as to plaintiff's claim of dumping different merchandise).

law.[4] In *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141 (S.D.Cal.1954), a patent infringement suit, the district court was faced with a proposed intervener who claimed ownership of the patent in question. The facts in *Hartley Pen* are in some ways quite similar to those in the instant case. Kimberly Corporation, the proposed intervener, claimed that two of its employees had invented a method of constructing ball point pens. *Id.* at 147–48. Kimberly asserted that despite the employees' duty to patent the process and assign it to Kimberly, they left Kimberly, formed a new company, and assigned the patent to the new company. *Id.* at 148. The district court held that Kimberly had constructive notice of its claims as soon as the patent was issued and the assignment was recorded; hence the claim was barred by the California statute of limitations. *Id.* at 157–58.

Nevertheless, in *Hartley Pen*, Kimberly already knew of the invention and continued to use it after the employees left. It could be expected to investigate any new patent on something it had been using for years, especially where two former employees obtained the patent. Brandau, on the other hand, was the only person in General Bedding who knew that the company might have a claim to a patent for a feasible tubular waterbed design. Thus, Brandau was the one most likely to be alerted by any new patent on such a design. It was much less likely that someone else in General Bedding should have suspected a claim, especially because Brandau's name was not on the patent.

After Kimberly was given a chance to amend its complaint, the new amended complaint *survived* a motion for summary judgment based in part on the statute of limitations. *Kimberly Corp. v. Hartley Pen Co.*, 237 F.2d 294, 295–97 (9th Cir. 1956). The district court did eventually find Kimberly's claims were barred, but only after a bench trial. *Id.* at 297. We affirmed this determination of a controvert-

ed *issue of fact* because it was not clearly erroneous. *Id.* at 301–01.

Our analysis is not changed by the advertising done by Angel Echevarria Company. Despite the defendants' contention that the advertising should have put General Bedding on notice of its claim or induced further inquiry, there is no evidence that anyone from General Bedding saw any of the ads. It is not clear that constructive knowledge of the contents of the ads should be imputed to General Bedding. *See, e.g., Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523, 532 (9th Cir.1976) (rarely will information published by media about corporation's financial condition be so massive as to give notice as a matter of law). Furthermore, the issue of whether the ads should have put General Bedding on notice involves even more factual questions than whether the patent should have put it on notice. All of the advertising was done in the name of "Somma," a trademark registered to Somma Products, Inc. General Bedding could not be expected to connect this to Echevarria or Brandau. Also, while the ads show a design for a tubular waterbed, arguably this should not have aroused General Bedding's suspicions. The ads only demonstrated that someone else succeeded where they had failed.

### CONCLUSION

The district court incorrectly ruled that as a matter of law General Bedding had constructive notice when the patent was issued. Because there are two reasonable inferences that can be made, there is a geniune issue of material fact regarding constructive notice. Therefore, summary judgment was inappropriate. The district court's order granting summary judgment is *REVERSED*, and this case is *REMANDED* for further proceedings.

---

**4.** *See, e.g., Volk v. D.A. Davidson & Co.*, 816 F.2d 1406 (9th Cir.1987) (notice to investors of IRS investigation of tax shelter, and of suspension of payments on which deductions were based, is constructive notice of fraud); *Harrell v. 20th*

*Century Ins. Co.*, 934 F.2d 203 (9th Cir.1991) (notice of loss of referral business is constructive notice of fraudulent promise that referrals would continue).